

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD–0413–07

**SAFETY NATIONAL CASUALTY CORP., AGENT MANUEL LEYVA D/B/A ROCKY BAIL BONDS, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE EIGHTH COURT OF APPEALS EL PASO COUNTY

MEYERS, J., delivered the opinion of the Court, in which KELLER, P.J., and PRICE, WOMACK, JOHNSON, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined. COCHRAN, J., filed a concurring opinion.

### O P I N I O N

Appellant, Safety National, sought exoneration from the forfeiture of a bond due to the incarceration of the defendant. *See* Article 22.13(a)(5) of the Texas Code of Criminal Procedure.[1] The trial court entered a judgment in favor of the State for one half the

---

[1]Unless otherwise specified, all future references to Articles refer to the Texas Code of Criminal Procedure.

amount of the original bond and entered findings of fact concluding that Article 22.13 (a)(5) unconstitutionally interferes with the trial court's discretion and with the finality of judgments.[2] Appellant appealed, and the court of appeals affirmed the judgment of the trial court. *Safety National v. State*, 225 S.W.3d 684 (Tex. App.–El Paso 2006). We granted review to consider the constitutionality of Articles 22.13(a)(5) and 22.16(a). We hold that the statutes are constitutional and remand the cause to the trial court.

## FACTS

Appellant posted a $10,000 bond on behalf of Willie Guerrero, who was charged with felony theft and was due to appear for a hearing on March 25, 2004. When a Safety National employee learned that Guerrero failed to appear at the hearing, she located him and informed the court coordinator that Guerrero would appear that afternoon. Instead, the coordinator told Appellant to bring Guerrero to court the following morning. Guerrero appeared the following morning and gave the trial judge several reasons for his failure to appear at his scheduled time, including the weather, car trouble, and that he had forgotten. The trial judge was offended by Guerrero's attitude and, as a result, entered a judgment nisi forfeiting the bond and placed Guerrero in custody. He was later released

---

[2]The relevant part of Article 22.13 states:
(a) The following causes, and no other, will exonerate the defendant and his sureties, if any, from liability upon the forfeiture taken:
> 5. The incarceration of the principal in any jurisdiction in the United States:
>> (A) in the case of a misdemeanor, at the time of or not later than the 180th day after the date of the principal's failure to appear in court; or
>> (B) in the case of a felony, at the time of or not later than the 270th day after the date of the principal's failure to appear in court.

on a new bond. At the final hearing on the judgment nisi, Appellant argued that it was entitled to exoneration under Code of Criminal Procedure Article 22.13(a)(5) because Guerrero was incarcerated the day after his failure to appear. The court entered a judgment for the State for $5,000 plus court costs and entered findings of fact and conclusions of law stating that Article 22.13(a)(5) is unconstitutional.

The trial court included the following in its findings of fact and conclusions of law: Article 22.13(a)(5) affects the timing and the finality of judgments and interferes with the core powers of the court and the administration of justice; the statute hampers the discretion of the court in controlling the time of trials and judgments because "to avoid multiple post-judgment actions, further tying up its docket, it would have to wait 9 months to enter a final judgment" and it places virtual time and amount limits out of the discretion of the court; Article V, Sections 1 and 8, of the Texas Constitution[3] vest power over bond forfeitures in the judicial branch and Article 22.13(a)(5) interferes with that

---

[3] *See* Article V, § 1 ("The judicial power of this State shall be vested in one Supreme Court, in one Court of Criminal Appeals, in Courts of Appeals, in District Courts, in County Courts, in Commissioners Courts, in Courts of Justices of the Peace, and in such other courts as may be provided by law. The Legislature may establish such other courts as it may deem necessary and prescribe the jurisdiction and organization thereof, and may conform the jurisdiction of the district and other inferior courts thereto."); Article V, § 8 ("District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, except in cases where exclusive, appellate, or original jurisdiction may be conferred by this Constitution or other law on some other court, tribunal, or administrative body. District Court judges shall have the power to issue writs necessary to enforce their jurisdiction. The District Court shall have appellate jurisdiction and general supervisory control over the County Commissioners Court, with such exceptions and under such regulations as may be prescribed by law.").

power; the stated purpose of a bond is to have an orderly docket by having defendants appear on time and for sureties to assist with that–to allow a defendant to interfere with the court's docket by not showing up for trial "without forfeiture of any portion of the bond would cause future, similar behavior by the defendants in this case and by other Sureties and accused persons"; and, taking away "discretion to order payment of all or part of a bond vitiates the purpose of a bond and would create havoc with the Court's calendar, allowing defendants to wonder [sic] in at a time and date of their own choosing."

Appellant appealed, arguing that the trial court's failure to exonerate was error and that the legal conclusions regarding Article 22.13(a)(5) were erroneous. The court of appeals overruled these arguments and considered only Appellant's argument that it was entitled to mandatory remittitur under Article 22.16(a) because Guerrero was released on a new bond in the case. The court of appeals held that the current version of Article 22.16(a) violates Article II, section 1, of the Texas Constitution[4] because it provides for mandatory remittitur at anytime prior to final judgment if the defendant principal is released on new bail in the case or the case for which bond is given is dismissed. In doing so, the legislature has removed the trial court's discretion to remit the bond in the

---

[4]Article II, § 1, discusses the Division of Powers and states, "The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted."

event new bail is given or the criminal case is dismissed. *Safety National*, 225 S.W.3d 684, 691-92.

Appellant filed a petition for discretionary review asking us to determine whether the court of appeals properly found that article 22.16(a) of the Texas Code of Criminal Procedure is unconstitutional based on a violation of the separation-of-powers provision in the Texas Constitution. We additionally granted review on our own motion to determine whether article 22.13(a)(5) of the Texas Code of Criminal Procedure is unconstitutional based on a violation of the separation-of-powers provision in the Texas Constitution.

## ARGUMENTS OF THE PARTIES

Appellant argues that articles 22.13 and 22.16 do not order a trial court to alter a final judgment and do not tell the trial court when it can enter a final judgment. Rather, Article 22.13 provides affirmative defenses for the surety, and Article 22.16 sets out the limited situations wherein the surety may seek remittitur of the bond prior to final judgment. Even after final judgment, Chapter 22 allows a special procedure under which the surety may seek the return of a portion of the bond amount. *See* Article 22.17. The legislature amended Chapter 22 in 2003, removing the limitations on the trial court's ability to enter a final judgment and setting out the situations in which a bondsman is entitled to a full remittitur if the request is made while the court has jurisdiction over the case. The time limits in Article 22.13(a)(5) apply to the surety, not to the trial court.

They are an expiration date on the surety's ability to use the defense that the principal is incarcerated, not a mandate telling the state when to enter a judgment; thus, the time periods do not prevent the trial court from entering a final judgment at any time. Article 22.16 also does not place time limits or restrictions on a trial court's ability to enter a final judgment. It provides for mandatory remittitur prior to the entry of the final judgment only in the limited situation of the principal being released on new bail in the case or if the case is dismissed, and for discretionary remittitur for good cause shown.

The time limits in the statutes simply place the burden on bondsmen to file a motion for remittitur while the court still has jurisdiction over the case and do not place restrictions on the court's ability to enter judgment, therefore, the statutes do not violate the separation-of-powers doctrine of the Texas Constitution. Finally, Appellant argues that the legislature has indicated an intent to reward bondsmen who assist the state in returning to custody principals who fail to appear, because the purpose of bail is to secure the presence of the accused, not to be a revenue device or to be punitive or to substitute for a fine. Without bondsmen, the court dockets would be even worse, and the state would either have to hire more officers to seek out defendants who are on bond and fail to appear or build more jails to hold those who are not released on bond.

The State argues that, through Articles 22.13(a)(5) and 22.16, "the Legislature told the Court what judgment it must enter and in so doing has improperly exercised power reserved to the judicial branch of government to hear controversies and apply discretion

to determine the amount of the judgment" and "by requiring a zero judgment in all cases, no matter what the circumstances, (i.e. the amount of the bond, the reason for missing court and the delay caused), the Legislature is improperly usurping a judicial function." This removes the court's power to consider facts related to the reason for the failure to appear and to enter a judgment based on those facts. Courts are also prevented by Article 22.13(a)(5) from entering a judgment for nine months because there is no guidance for the court concerning situations wherein a final judgment is given prior to nine months and the defendant is returned after the judgment but before the nine months have expired. This interferes with the court's ability to control its docket because the court's judgment would not actually be final until 270 days had passed since, even if final judgment were entered, it would be nullified or would have to be reformed if the defendant became incarcerated within that time period. The State claims that subsequent appearance should not exonerate a forfeiture because that would allow defendants to keep missing hearings until there are no witnesses or evidence against him, and therefore, there should be a penalty for failure to appear at the designated time. Complete remission of the forfeiture would mean that the defendant is not really bound to appear and can create continuances at will. Because the court has the discretion to set the amount of the bail, and the purpose of a bond is to assure the fulfillment of an obligation to appear in court and to pay a penalty if that obligation is not fulfilled, the State asserts that it violates the separation-of-powers doctrine for the Legislature to make the bond unenforceable through forced

exoneration and for the surety to have the same risk whether the court sets a high or low bond. As such, the Legislature has made failure to appear an offense without a penalty, which interferes with the orderly processes of the courts. The State points out that, in *Lyles v. State*, 850 S.W.2d 497, 501 (Tex. Crim. App. 1993), this Court said that the old statute requiring mandatory remittitur at any time prior to final judgment removed a trial court's discretion. Under the same reasoning, forcing a court to enter a zero judgment against a bond also violates separation of powers.

## CASE LAW

The former version of Article 22.16 encompassed both the issues of the principal's incarceration and the principal's release on new bail. The legislature amended Article 22.16 in 2003 and moved the section that addressed the principal's incarceration to Article 22.13. In *Armadillo Bail Bonds v. State* 802 S.W.2d 237 (Tex.Cr.App.,1990), *State v. Matyastik*, 811 S.W.2d 102 (Tex. Crim. App. 1991), and *Lyles*, we held that the former statute was unconstitutional.

Considering the former version of Article 22.16, which placed time restrictions upon when a final judgment could be entered,[5] *Armadillo* held that the restrictions on the

---

[5] Former Article 22.16 stated:
(a) After forfeiture of a bond and before the expiration of the time limits set by Subsection (c) of this article, the court shall, on written motion, remit to the surety the amount of the bond after deducting the costs of court, any reasonable costs to the county for the return of the principal, and the interest accrued on the bond amount as provided by Subsection (e) of this article if:
  (1) the principal is incarcerated in the county in which the prosecution is pending;
  (2) the principal is incarcerated in another jurisdiction and the incarceration is verified as provided by Subsection (b) of this article;

court's right to determine when to decide a case violated the separation-of-powers

provision of the Texas Constitution. We stated, "We have held repeatedly that the

separation of powers provision may be violated in either of two ways. First, it is violated

when one branch of government assumes, or is delegated, *to whatever degree*, a power

that is more 'properly attached' to another branch. The provision is also violated when

one branch *unduly* interferes with another branch so that the other branch cannot

*effectively* exercise its constitutionally assigned powers." *Armadillo,* 802 S.W.2d at 239

(internal citations omitted) (emphasis in original). We explained that the judicial branch

has the power to hear evidence, decide issues of fact, decide questions of law, enter a

final judgment on the facts and the law, and execute the final judgment or sentence, and

---

(3) the principal is released on new bail in the case;
(4) the principal is deceased; or
(5) the case for which bond was given is dismissed.

(b) For the purposes of Subsection (a)(2) of this article, a surety may request confirmation of the incarceration of his principal by written request to the law enforcement agency of the county where prosecution is pending. A law enforcement agency in this state that receives a request for verification shall notify the court in which prosecution is pending and the surety whether or not the principal is or has been incarcerated in another jurisdiction and the date of the incarceration.

(c) A final judgment may be entered against a bond not earlier than:
(1) nine months after the date the forfeiture was entered, if the offense for which the bond was given is a misdemeanor; or
(2) 18 months after the date the forfeiture was entered, if the offense for which the bond was given is a felony.

(d) After the expiration of the time limits set by Subsection (c) of this article and before the entry of a final judgment against the bond, the court in its discretion may remit to the surety all or part of the amount of the bond after deducting the costs of court, any reasonable costs to the county for the return of the principal, and the interest accrued on the bond amount as provided by Subsection (e) of this article.

(e) For the purposes of this article, interest accrues on the bond amount from the date of forfeiture in the same manner and at the same rate as provided for the accrual of prejudgment interest in civil cases.

the Legislature has authority over judicial administration, as long as it does not infringe upon the substantive power of the judicial branch. *Id*. at 239-240. In *Matyastik*, we extended our holding in *Armadillo*, eliminating the time restrictions in Article 22.16(c) and determining that remittitur may occur anytime between forfeiture and the entry of a final judgment. *Matyastik*, 811 S.W.2d at 104. We considered this issue again in *Lyles v. State* and held that the mandatory remittitur provisions of Article 22.16 are void, but because Article 22.16(d) allows the trial court to remit all or part of the bond at the court's discretion prior to the entry of a final judgment, that subsection does not violate the separation-of-powers. 850 S.W.2d at 501.

**ANALYSIS**

In discussing the reasons for the 2003 amendments to Articles 22.13 and 22.16, the Legislature stated that, "the state is more interested in having the defendant appear than in receiving forfeited bond money. Setting time limits on when bonds would be forfeited would result in more defendants ultimately appearing in court because bondsmen would have a financial incentive to produce the principal many weeks after he or she originally failed to appear in court . . . [and] would give bondsmen consistency for principals who were incarcerated, while allowing a judge to adjust the time period as needed in a particular case." SENATE COMM. ON CRIMINAL JURISPRUDENCE, BILL ANALYSIS, Tex. S.B. 1336, 78th Leg., R.S. (2003).

As we stated in *State v. Sellers*, 790 S.W.2d 316, 321 (Tex. Crim. App. 1990), a

judgment nisi alone does not authorize recovery of a bond amount by the State. A judgment nisi is a provisional judgment that is not final or absolute, but may become final. *See* Article 33.14. Nisi means "unless," so a judgment nisi is valid unless a party shows cause why it should be withdrawn. In the case before us, Appellant argues that there are two reasons that the judgment should be withdrawn. First, the defendant was incarcerated the day after his initial failure to appear, which, under Article 22.13(a)(5), triggers exoneration from the forfeiture of the bond. Second, the defendant was released on new bond in the same case after he was arrested on the warrant resulting from the judgment nisi, which is a reason for remittitur prior to final judgment under Article 22.16 (a).

The State reads Article 22.13(a)(5) to mean that the court cannot enter a final judgment for nine months because then it would have "multiple post-judgment actions" if the defendant returned after final judgment but within nine months after his failure to appear. However, Article 22.13 does not say that the trial court must wait until the time in subsection (a)(5) lapses to enter a final judgment. The statute does not prohibit the entry of a judgment or dictate when the judgment must be entered. In fact, Article 22.13 says nothing about the entry of a final judgment–it simply provides the surety with a defense if the defendant is incarcerated within nine months after he fails to appear. If that term ends before the court enters a final judgment on the bond, under Article 22.13, the court must remit the amount of the bond.

The State also implies that Article 22.13(a)(5) is triggered by the defendant's incarceration, whether or not he is returned, and that he will be exonerated without ever appearing in court, stating that "Article 22.13(a)(5) requires a zero judgment regardless of the crime for which the defendant is arrested and <u>without the actual return of the Defendant-Principal</u> to the County of his prosecution." (Emphasis in Respondent's Brief on the Merits). This is simply incorrect. As specifically stated in Article 22.13(b), a surety exonerated under subsection (a)(5) remains obligated to pay costs incurred by a county to secure the return of the principal. Similarly, the court must remit the amount of the bond under Article 22.16 if the defendant has been given new bond *in the same case* or the case has been dismissed. It makes sense that when a new bond is issued in a case, the old bond should be remitted; this does not mean that a defendant can be on bond somewhere else for some other case and be entitled to full remittitur. Both Articles 22.13 and 22.16 require remittitur only in specific, limited situations–situations in which the return of the defendant is certain (because the defendant is incarcerated elsewhere), the return is secured by another bond in the same case, or the return is unnecessary (because the case has been dismissed).[6]

The point of Article 22.13(a)(5) is that, if the defendant is incarcerated when or shortly after he failed to appear, securing his return to appear is quite easy and does not

---

[6]We note that there are other situations in the Code of Criminal Procedure in which the legislature has limited the circumstances under which courts may provide a requested remedy. For example, in Articles 11.07, § 4 and 11.071, § 5, the legislature tells us under what limited conditions we may consider a subsequent application for writ of habeas corpus.

require the assistance of a bondsman. Because the county would incur the cost to transfer the defendant from another jurisdiction, Article 22.13(b) makes the surety liable for any costs incurred by the county to secure the return of the defendant. But the statute does not require a court to wait nine months before entering a final judgment, and thus, does not interfere with a court's timing or finality of judgments. In this case, Guerrero was returned the day after his failure to appear and was in court prior to the forfeiture of the bond. He was placed in custody at the same time the court entered the judgment nisi forfeiting the bond. And Appellant requested remittitur under Article 22.13 prior to the entry of final judgment. Therefore, the State's hypothetical regarding Article 22.13 forcing the trial court to wait nine months before entering judgment does not apply to this situation.

We disagree with the State's argument that there is no guidance for the court concerning situations wherein a final judgment is given prior to nine months and the defendant is returned after the judgment but before the nine months have expired. Article 22.17 specifically allows for a special bill of review up to two years after a final judgment has been entered, which may include a request that all or part of the forfeited bond be returned. The State is also incorrect that complete remission of the forfeiture would mean that the defendant is not really bound to appear and can create continuances at will and that the Legislature has made failure to appear an offense without a penalty. There are penalties, such as contempt and additional criminal charges, that can be pursued to punish

a defendant for failure to appear, or the court can require a cash-only bond in lieu of a surety bond. *See* Article 23.05(a). And bail is not intended to be punitive or to be a revenue device. Bail bonding is a business; therefore, having to pay court costs and interest for the time during which a defendant fails to appear is incentive for the bondsman to secure the attendance of the defendant at his scheduled hearing. The surety does not have the same risk when the court sets a high bail as it has when the court sets a low one, because a high bond has higher interest for the time it takes the surety to return the defendant.

## CONCLUSION

Articles 22.13 and 22.16 do not interfere with the trial court's ability to enter final judgment, nor do they dictate the time frame within which a trial court may enter a final judgment. The statutes do not violate the separation-of-powers doctrine and thus are not unconstitutional. The decision of the court of appeals is reversed, and the cause is remanded to the trial court.

Meyers, J.

Delivered: May 14, 2008

Publish