NO. 07-09-0045-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

OCTOBER 27, 2009

______________________________
Â 

IN THE INTEREST OF S.M.L., A CHILD

_________________________________

FROM THE 110th DISTRICT COURT OF FLOYD COUNTY;

NO. 9918; HONORABLE WILLIAM P. SMITH, JUDGE

_______________________________

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.


MEMORANDUM OPINION


Â Â Â Â Â Â Â Â Â Â S.M.L., the child the subject of this suit, is a male child born December 14, 2006. 
Appellants, S.M.L.âs maternal grandparents, appeal an order issued by the Honorable
William P. Smith of the 110th District Court, affirming an order issued by Associate Judge
Phil Vanderpool


 terminating the parental rights of S.M.L.âs parents and appointing the
Department of Family and Protective Services (hereinafter the âDepartmentâ) as S.M.L.âs
permanent sole managing conservator. In a single issue, Appellants assert the trial court
erred by either failing to appoint them as S.M.L.âs conservators or by failing to grant them
possession or access to S.M.L. We affirm. 
Background
Â Â Â Â Â Â Â Â Â Â In March 2007, the Department placed S.M.L. in a foster home due to an abusive
home environment and filed an original petition for conservatorship and termination of the
parental rights of S.M.L.âs parents.


 Attached to the Departmentâs petition was an affidavit
by a Department caseworker, who sought an earlier emergency hearing and protective
order, describing extensive acts of domestic violence between family members resulting
in injuries to S.M.L. Following an adversary hearing, the associate judge issued an order
appointing the Department as S.M.L.âs temporary managing conservator.
Â Â Â Â Â Â Â Â Â Â On January 10, 2008, the associate judge issued an order authorizing placement
of S.M.L. with Appellants. The order further provided that the Department would continue
serving as S.M.L.âs temporary sole managing conservator. The order also prohibited any
access, communication, or contact between S.M.L. and his parents, except under the
direct supervision and monitoring of the Department. 
Â Â Â Â Â Â Â Â Â Â On January 31, a final hearing was held on the Departmentâs petition. All parties,
including an attorney and guardian ad litem for the child, appeared and announced ready. 
At that hearing, the Department presented irrevocable affidavits executed by S.M.L.âs
parents voluntarily relinquishing their parental rights and consenting to the appointment of
the Department as S.M.L.âs sole managing conservator. Jametra Hill, a Department
caseworker, recommended the affidavits be accepted, the parental rights be terminated,
and that S.M.L. remain placed with his maternal grandparents under the supervision of the
Department.


 Hill also indicated the Department would oversee the adoption process
applicable to Appellants. S.M.L.âs guardian ad litem agreed that the parental rights of
S.M.L.âs parents should be terminated and, in the event S.M.L.âs maternal grandparents
were not the ultimate adoptive parents, that S.M.L. be placed for adoption by a non-relative. The associate judge then found the evidence sufficient, terminated the parental
rights of S.M.L.âs parents, and appointed the Department permanent sole managing
conservator of S.M.L. An order reflecting the associate judgeâs judgment was signed on
March 5, 2008, and filed on March 10, 2008.


 Pursuant to that order, the Department
continued S.M.L.âs placement with Appellants. 
Â Â Â Â Â Â Â Â Â Â Subsequent to the associate judgeâs oral pronouncement of judgment, but prior to
the entry of a written order, a Department employee observed Appellants permitting
contact between S.M.L. and his parents in violation of the order of January 10.


 
Thereafter, at the discretion of the Department, S.M.L. was removed from Appellantsâ
residence and, on February 25, he was placed in a second foster home studied and
approved by the Department for adoption. 
Â Â Â Â Â Â Â Â Â Â Two days after entry of the associate judgeâs written order of termination, on March
7, 2008, Appellants filed a petition to intervene in the Departmentâs termination suit. The
petition sought to have Appellants appointed as S.M.L.âs joint managing conservators, with
the exclusive right to designate the primary residence of the child, in addition to an order
granting Appellants possession of or access to the child.


 
Â Â Â Â Â Â Â Â Â Â On July 22, Appellants filed a first amended petition in intervention and, in addition
to previous remedies, requested adoption. On August 6, 2008, the associate judge issued
an order granting the Departmentâs motion to strike Appellantsâ original petition in
intervention filed March 7. Thereafter, Appellants sought a de novo hearing before the
referring court.



Â Â Â Â Â Â Â Â Â Â Â On August 29, 2008, S.M.L.âs new foster parents, with the Departmentâs consent,
filed their original petition to adopt S.M.L. in the 237th District Court in Lubbock County. 
They also sought to intervene in the Departmentâs suit to terminate the parental rights of
S.M.L.âs parents filed in Floyd County.
Â Â Â Â Â Â Â Â Â Â In September, the associate judge reviewed and approved a placement report
describing a permanency plan calling for S.M.L.âs adoption while continuing all previous
orders without modification. On October 14, Appellants filed a second amended original
petition in intervention in the Floyd County proceeding. On December 3, 2008, the trial
court âreheardâ the Departmentâs termination suit. With all parties present, the trial court
implicitly overruled pending objections to jurisdiction and standing, and proceeded to hear
the merits of the case. In an order issued January 5, 2009, the trial court affirmed the
associate judgeâs January 31, 2008 ruling. On January 26, 2009, Appellants filed their
notice of appeal contesting that order.
Standard of Review
Â Â Â Â Â Â Â Â Â Â A trial court has broad discretion to determine issues related to conservatorship,
visitation, and possession, see In re Doe 2, 19 S.W.3d 278, 281 (Tex. 2000); Gillespie v.
Gillespie, 644 S.W.2d 449, 451 (Tex. 1982), and the decision of the court may be reversed
only if it appears that the court abused its discretion in light of the record as a whole. Id. 
A trial court abuses its discretion when it acts arbitrarily or unreasonably, without reference
to any guiding rules or principles. Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990). 
See In Interest of Doe, 917 S.W.2d 139, 141 (Tex.App.âAmarillo 1996, writ denied). 
Furthermore, we may not reverse the trial courtâs judgment simply because we might
disagree with the outcome. Rather, before a decision of the trial court may be reversed
we must conclude that the decision lacked basis in fact or law or involved a misapplication
of fact to law. In re C.R.T., 61 S.W.3d 62, 65 (Tex.App.âAmarillo 2001, pet. denied).
Â Â Â Â Â Â Â Â Â Â When determining issues related to conservatorship or possession of and access
to the child, the best interest of the child is the primary consideration. Tex. Fam. Code
Ann. Â§ 153.002 (Vernon 2008); See In re M.S., 115 S.W.3d 534, 547 (Tex. 2003). In
determining the best interest of the child, the court may consider several non-exclusive
factors: (1) the desires of the child; (2) the emotional and physical needs of the child now
and in the future; (3) the emotional and physical danger to the child now and in the future;
(4) the parenting abilities of the parties seeking conservatorship; (5) the programs available
to assist those persons; (6) the plans for the child by the parties seeking conservatorship;
and (7) the stability of the home or proposed placement. Holley v. Adams, 544 S.W.2d
367, 372 (1976). 
Analysis
Â Â Â Â Â Â Â Â Â Â S.M.L. was originally removed from the custody of his parents in January 2007,
because the Department had serious concerns about his safety and well-being while in
their presence. At that time, the child was placed in the home of Appellants, subject to a
written safety plan stating that Appellants would not allow the parents to have any contact
with the child unless supervised by the Department. In March 2007, Appellants allowed
the parents to have unsupervised possession of the child. During that period of
unsupervised possession, the mother was arrested for domestic violence against the father
and the child was once again removed by the Department. 
Â Â Â Â Â Â Â Â Â Â In September 2007, following the completion of a home study and anger
management classes, the child was again placed in Appellantsâ custody. Again, Appellants
signed a safety plan agreeing to not allow the parents to have any contact with the child
unless supervised by the Department. In January 2008, by order of the court, Appellants
were specifically prohibited from allowing any âaccess, communication, or contactâ between
S.M.L. and his parents, except under the direct supervision and monitoring of the
Department.
Â Â Â Â Â Â Â Â Â Â After the parents stopped participating in services offered by the Department, the
decision was made to seek termination of their parental rights. Following the execution of
voluntary relinquishments of paternity, the associate judge terminated the parental rights
of the mother and father and appointed the Department as the childâs sole managing
conservator. At the time of that proceeding, the child was in Appellantsâ custody and the
Departmentâs plan was for them to adopt the child. A short time later, Appellants were
observed allowing the parents unsupervised contact. This unauthorized contact prompted
the Department to again remove the child from Appellantsâ home and place him in new
foster care.
Â Â Â Â Â Â Â Â Â Â In addition to hearing testimony concerning the childâs care and supervision while
in the custody of Appellants, the trial court also heard testimony concerning the childâs new
placement. A case worker testified that the child had bonded with the new placement
parents, that their care and supervision was appropriate, that the child referred to them as
âMommaâ and âDaddy,â that they had initiated adoption proceedings, and that it was in the
childâs best interest that he remain in the new placement.
Â Â Â Â Â Â Â Â Â Â Given the instances of Appellantsâ failure to follow the safety plans adopted for the
child, their inability to recognize the danger presented to the child by parental contact, as
well as the prospective plans for the child, we cannot say that the trial courtâs decision to
not appoint Appellants as managing conservators or to order possession or access was 
arbitrary, unreasonable, or without reference to any guiding rules or principles. 
Accordingly, Appellantsâ sole issue is overruled.
 Â Â Â Â Â Â Â Â Â Â CONCLUSION
Â Â Â Â Â Â Â Â Â Â The trial courtâs judgment is affirmed.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Patrick A. Pirtle

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â JusticeÂ Â Â Â Â  



>

Â 

______________________________

Â 

Â 

TIMOTHY RAY WILLIAMS, APPELLANT

Â 

V.

Â 

THE STATE OF TEXAS, APPELLEE

Â 

Â 

_________________________________

Â 

FROM THE 181ST DISTRICT COURT OF RANDALL
COUNTY;

Â 

NOS. 18,246-B, 11,592-B, and 18,325-B; HONORABLE JOHN
B. BOARD, JUDGE

Â 

_______________________________

Â 

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

OPINION ON ABATEMENT

   On February 25, 2010, in cause
numbers 11,592-B (07-10-0100-CV), 18,246-B (07-10-0091-CV), and 18,325-B
(07-10-0101-CV), the trial court signed and entered a document entitled Order to Withdraw Inmate Funds (Pursuant to
TX. GOVÂT. Code, Sec. 501.014(e)).[1]
Â Â Â By the withdrawal notifications entered
in each case, the trial court directed the Texas Department of Criminal Justice
Institutional Division to withhold the amounts of $671.50 (Cause No. 11,592-B),
$13,791.50 (Cause No. 18,246-B), and $1,363.43 (Cause No. 18,325-B) from Appellant's
inmate trust account.Â  While each withdrawal
notification contained the statement that "court costs, fines, and fees
have been incurred as represented in the certified Bill of Costs/Judgment
attached hereto," none contained an attachment of any kind.Â  Furthermore, while the judgment entered in
each case provides that the "State of Texas do have and recover of the
said [Appellant] all costs in this proceeding incurred . . .," the summary
portion of each judgment leaves costs blank.

Â Â Â Â Â Â Â Â Â Â Â  In Harrell v. State, 286 S.W.3d 315 (Tex. 2008), the Texas Supreme
Court held that a withdrawal notification directing prison officials to
withdraw money from an inmate trust account pursuant to Â§ 501.014(e) is a civil matter[2]
akin to a garnishment action or an action to obtain a turnover order.Â  Harrell,
286 S.W.3d at 317-19.Â  In determining
whether Harrell was accorded constitutional due process in that proceeding, the
Court balanced three factors discussed in Mathews
v. Eldridge, 424
U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and noted that Harrell had "already received some measure of due
process."Â  Harrell, 286 S.W.3d at 320.

Â Â Â Â Â Â Â Â Â Â Â  The
three Eldridge factors considered in Harrell are: (1) the private interest
affected by the official action, (2) the risk of an erroneous deprivation of
such interests through the procedures used, and the probable value, if any, of
additional or substitute procedural safeguards, and (3) the Government's
interest, including the function involved and the fiscal and administrative
burdens that additional or substitute procedural requirements would
entail.Â  The Court found that private
interest to be easily ascertainable--"the amount identified in a prior
court document", i.e., "the costs assessed when the convicting court
sentenced him."Â  Harrell,
286 S.W.3d at 320.Â  Regarding the risk of erroneous
deprivation, the Court identified the risk as modest where withdrawal
notifications under the statute are based on an amount identified in a previous
court document.Â  See Tex. Gov't Code Ann. Â§ 501.014(e)(1)-(6)
(Vernon Supp. 2009).Â  The Court noted
that "Harrell was . . . notified of the costs assessed when the convicting
court sentenced him" and he was free to contest them at the time they were
assessed. Harrell, 286 S.W.3d at
320.Â  However, the Court went on to recognize
there could be a greater risk of erroneous deprivation in instances in which
the amount in the withdrawal notification varied from the amount in the
underlying judgment or those instances where there were clerical or other
errors.Â  Id.Â  In assessing the final
factor, the Government's interest, the Court addressed the fiscal and
administrative burdens of added or alternative procedures and concluded that
the Texas Department of Criminal Justice would face expending more money than
it would collect if it were required to conform to "full-blown"
statutory garnishment requirements.Â  In
the Court's opinion, such a drawn-out procedure might subvert the Legislature's
goal of efficient cost-collection.Â  Id.

Harrell had been convicted of drug
charges in 1997 and 2003.Â  In 2006, the
convicting trial court signed an order authorizing the Texas Department of Criminal
Justice to withdraw funds from his inmate trust account to pay for court costs
and fees for appointed counsel.Â  Harrell
was provided with copies of the withdrawal notifications.Â  He then moved to rescind the withdrawal
notifications alleging denial of due process.Â 
His motion was denied, and his direct appeal to this Court was dismissed
for want of jurisdiction on the ground that no statutory mechanism was
available for appealing a withdrawal notification.Â  See
Harrell v. State, Nos. 07-06-0469-CR and 07-06-0470-CR, 2007 WL 2301350 (Tex.App.--Amarillo
Aug. 13, 2007), rev'd,
286 S.W.3d 315 (Tex. 2008). 

Â Â Â Â Â Â Â Â Â Â Â  In reversing this Court and
rendering judgment affirming the trial court's order denying Harrell's motion to rescind, the Supreme Court held
that due process entitles an inmate to receive notice[3]
and an opportunity to be heard, even though those requirements might be
accorded the inmate after funds are withdrawn.Â 
Harrell, 286 S.W.3d at
321.Â  It concluded that because Harrell
had received notice (a copy of the withdrawal
notification) and an opportunity
to be heard[4] (the
motion to rescind), he had received all that due process
required.Â  Id.Â  The Court added,
"[t]he Constitution does not require pre-withdrawal notice or a
comprehensive civil garnishment proceeding."Â  Id.

Â Â Â Â Â Â Â Â Â Â Â  Â On the limited record before this Court, we
are unable to determine if Appellant has been given all that due process requires.Â  Specifically, because we do not have a copy
of the underlying court order, we are unable to determine either the factual
basis for the withdrawal notification, or whether Appellant has been afforded an
adequate opportunity "to compare the amounts assessed by the trial court
[in the underlying criminal proceedings] to the amount[s] withdrawn and alert
the court of any alleged errors."Â  Id.Â  Because
the trial court has not entered an appealable order either granting or denying
a motion to confirm, modify, correct, or rescind the prior withdrawal
notification, we find Appellant's notice
of appeal to be premature.

Â Â Â Â Â Â Â Â Â Â Â  Accordingly, this Court sua sponte abates this appeal for 180
days from the date of this order to allow Appellant time to take such action as
is necessary to (1) obtain the necessary documentation of the underlying court
order; (2) compare the underlying court order to the withdrawal notification;
(3) file an appropriate motion to modify, correct, or rescind the withdrawal
notification; (4) present that motion to the trial court; (5) schedule any
necessary hearing; and (6) obtain from the trial court a final appealable order
addressing that motion.Â  See Tex. R. App. P. 27.2.Â  See
also Iacono v. Lyons, 6 S.W.3d 715 (Tex.App.--Houston [1st Dist.] 1999,
no pet.).Â  All appellate timetables will
begin to run from the date a final, appealable order is signed.

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  It
is so ordered.

Â 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Per
Curiam











[1]This
document is not an "order" in the traditional sense of a court order,
judgment, or decree issued after notice and hearing in either a civil or
criminal proceeding.Â  The controlling
statute, Tex. Gov't Code Ann. Â§ 501.014(e) (Vernon Supp. 2009), describes
the process as a "notification by a court" directing prison officials
to withdraw sums from an inmate's trust account, in accordance with a schedule
of priorities set by the statute, for the payment of "any amount the
inmate is ordered to pay by order of the court."Â  See
id. at Â§ 501.014(e)(1)-(6).Â  See
also Harrell v. State, 286 S.W.3d 315, 316, n.1 (Tex. 2009).Â  This document is more akin to a judgment
nisi.Â  A judgment nisi, commonly used in
bond forfeiture proceedings, is a provisional judgment entered when an accused
fails to appear for trial.Â  A judgment
nisi triggers the issuance of a capias
and it serves as notice of the institution of a bond forfeiture
proceeding.Â  It is not final or absolute,
but may become final.Â  See Safety Nat'l Cas. Corp.
v. State, 273 S.W.3d 157, 163 (Tex.Crim.App. 2008). Nisi means
"unless," so a judgment nisi is valid unless a party takes action
causing it to be withdrawn.Â  Id.Â  Similarly,
a withdrawal notification issued pursuant to Â§
501.014(e), triggers a trust fund withdrawal, serves as notice of the
collection proceeding, and continues to operate unless the inmate takes action
causing the notification to be withdrawn.Â 
Therefore, rather than refer to that document as an order, we prefer to
use the term "withdrawal notification" to avoid confusion with the
underlying court order or judgment ordering the payment of a sum falling within
at least one of the six priority categories listed in the statute.

Â 





[2]See Johnson v. Tenth Judicial
District Court of Appeals at Waco, 280 S.W.3d 866, 869 (Tex.Crim.App. 2008)
(holding that orders directing withdrawal of funds from inmate trust accounts
is not a criminal matter).

Â 





[3]In
assessing the risk of erroneous deprivation of property, the Supreme Court in Harrell considered the risk to be
"modest" because notice under the statute is "based on an amount identified in a prior court document."Â  Harrell,
286 S.W.3d at 320 (emphasis added).Â 
The Court went on to comment that the risk would be minimized if the
trial court included a copy of the underlying order or judgment that assessed
costs when it issues a withdrawal notification.Â 
We wholeheartedly adopt the Supreme Court's recommendation in this
regard.Â  We express no opinion as to
whether a clerk issued bill of costs or a statement in an underlying court
document which merely assesses "costs of court" against the defendant
without stating the basis or amount of those costs constitutes adequate notice
for purposes of due process.Â  We further
note that the mere assessment of attorney fees does not make them collectable
through this process.Â  Under article
26.05(g) of the Texas Code of Criminal Procedure, the trial court has authority
to order reimbursement of appointed attorney fees only if the court makes a
fact-specific determination that a defendant has financial resources that
enable him to offset, in part or in whole, the costs of the legal services
provided.Â  See Tex. Code Crim. Proc. Ann. art. 26.05(g)
(Vernon Supp. 2009).Â  See also Mayer v. State, ___ S.W.3d ___,
PD-0069-09, 2010 WL 1050331, at *4 (Tex.Crim.App.
March 24, 2010).

Â 





[4]While
the court of appeals's opinion is silent on whether a
hearing was held on Harrell's motion to rescind, Harrell v. State, Nos. 07-06-0469-CR, 07-06-0470-CR, 2007 WL
2301350 (Tex.App.--Amarillo, Aug. 13, 2007), revÂd, 286 S.W.3d
315 (Tex. 2008), the trial court did enter a specific order denying his motion
to rescind the withdrawal notification.Â 
We read the Supreme Court's opinion as assuming that, by this process,
Harrell was given "an opportunity to be heard."Â  Harrell,
286 S.W.3d at 321.

Â