NO. 07-10-0091-CV
NO. 07-10-0100-CV
NO. 07-10-0101-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

APRIL 22, 2010

_____

TIMOTHY RAY WILLIAMS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 181ST DISTRICT COURT OF RANDALL COUNTY;

NOS. 18,246-B, 11,592-B, and 18,325-B; HONORABLE JOHN B. BOARD, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION ON ABATEMENT**

On February 25, 2010, in cause numbers 11,592-B (07-10-0100-CV), 18,246-B (07-10-0091-CV), and 18,325-B (07-10-0101-CV), the trial court signed and entered a document entitled *Order to Withdraw Inmate Funds (Pursuant to TX. GOV'T. Code,*

*Sec. 501.014(e)).*[1]   By the withdrawal notifications entered in each case, the trial court directed the Texas Department of Criminal Justice Institutional Division to withhold the amounts of $671.50 (Cause No. 11,592-B), $13,791.50 (Cause No. 18,246-B), and $1,363.43 (Cause No. 18,325-B) from Appellant's inmate trust account.   While each withdrawal notification contained the statement that "court costs, fines, and fees have been incurred as represented in the certified Bill of Costs/Judgment attached hereto," none contained an attachment of any kind.   Furthermore, while the judgment entered in each case provides that the "State of Texas do have and recover of the said [Appellant] all costs in this proceeding incurred . . .," the summary portion of each judgment leaves costs blank.

In *Harrell v. State*, 286 S.W.3d 315 (Tex. 2008), the Texas Supreme Court held that a withdrawal notification directing prison officials to withdraw money from an inmate

---

[1]This document is not an "order" in the traditional sense of a court order, judgment, or decree issued after notice and hearing in either a civil or criminal proceeding.  The controlling statute, Tex. Gov't Code Ann. § 501.014(e) (Vernon Supp. 2009), describes the process as a "notification by a court" directing prison officials to withdraw sums from an inmate's trust account, in accordance with a schedule of priorities set by the statute, for the payment of "any amount the inmate is ordered to pay by order of the court."  *See id.* at § 501.014(e)(1)-(6).  *See also Harrell v. State,* 286 S.W.3d 315, 316, n.1 (Tex. 2009). This document is more akin to a judgment nisi.  A judgment nisi, commonly used in bond forfeiture proceedings, is a provisional judgment entered when an accused fails to appear for trial.  A judgment nisi triggers the issuance of a *capias* and it serves as notice of the institution of a bond forfeiture proceeding. It is not final or absolute, but may become final.  *See Safety Nat'l Cas. Corp. v. State,* 273 S.W.3d 157, 163 (Tex.Crim.App. 2008). Nisi means "unless," so a judgment nisi is valid unless a party takes action causing it to be withdrawn.  *Id.*  Similarly, a withdrawal notification issued pursuant to § 501.014(e), triggers a trust fund withdrawal, serves as notice of the collection proceeding, and continues to operate unless the inmate takes action causing the notification to be withdrawn.  Therefore, rather than refer to that document as an order, we prefer to use the term "withdrawal notification" to avoid confusion with the underlying court order or judgment ordering the payment of a sum falling within at least one of the six priority categories listed in the statute.

trust account pursuant to § 501.014(e) is a civil matter[2] akin to a garnishment action or an action to obtain a turnover order. *Harrell,* 286 S.W.3d at 317-19. In determining whether Harrell was accorded constitutional due process in that proceeding, the Court balanced three factors discussed in *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and noted that Harrell had "already received some measure of due process." *Harrell,* 286 S.W.3d at 320.

The three *Eldridge* factors considered in *Harrell* are: (1) the private interest affected by the official action, (2) the risk of an erroneous deprivation of such interests through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail. The Court found that private interest to be easily ascertainable--"the amount identified in a prior court document", i.e., "the costs assessed when the convicting court sentenced him." *Harrell,* 286 S.W.3d at 320. Regarding the risk of erroneous deprivation, the Court identified the risk as modest where withdrawal notifications under the statute are based on an amount identified in a previous court document. *See* Tex. Gov't Code Ann. § 501.014(e)(1)-(6) (Vernon Supp. 2009). The Court noted that "Harrell was . . . notified of the costs assessed when the convicting court sentenced him" and he was free to contest them at the time they were

---

[2]*See Johnson v. Tenth Judicial District Court of Appeals at Waco*, 280 S.W.3d 866, 869 (Tex.Crim.App. 2008) (holding that orders directing withdrawal of funds from inmate trust accounts is not a criminal matter).

3

assessed. *Harrell,* 286 S.W.3d at 320. However, the Court went on to recognize there could be a greater risk of erroneous deprivation in instances in which the amount in the withdrawal notification varied from the amount in the underlying judgment or those instances where there were clerical or other errors. *Id.* In assessing the final factor, the Government's interest, the Court addressed the fiscal and administrative burdens of added or alternative procedures and concluded that the Texas Department of Criminal Justice would face expending more money than it would collect if it were required to conform to "full-blown" statutory garnishment requirements. In the Court's opinion, such a drawn-out procedure might subvert the Legislature's goal of efficient cost-collection. *Id.*

Harrell had been convicted of drug charges in 1997 and 2003. In 2006, the convicting trial court signed an order authorizing the Texas Department of Criminal Justice to withdraw funds from his inmate trust account to pay for court costs and fees for appointed counsel. Harrell was provided with copies of the withdrawal notifications. He then moved to rescind the withdrawal notifications alleging denial of due process. His motion was denied, and his direct appeal to this Court was dismissed for want of jurisdiction on the ground that no statutory mechanism was available for appealing a withdrawal notification. *See Harrell v. State*, Nos. 07-06-0469-CR and 07-06-0470-CR, 2007 WL 2301350 (Tex.App.--Amarillo Aug. 13, 2007), *rev'd*, 286 S.W.3d 315 (Tex. 2008).

In reversing this Court and rendering judgment affirming the trial court's *order denying Harrell's motion to rescind*, the Supreme Court held that due process entitles an inmate to receive notice[3] and an opportunity to be heard, even though those requirements might be accorded the inmate after funds are withdrawn. *Harrell*, 286 S.W.3d at 321. It concluded that because Harrell had received notice (a copy of the *withdrawal notification*) and an opportunity to be heard[4] (*the motion to rescind*), he had received all that due process required. *Id.* The Court added, "[t]he Constitution does not require pre-withdrawal notice or a comprehensive civil garnishment proceeding." *Id.*

On the limited record before this Court, we are unable to determine if Appellant has been given all that due process requires. Specifically, because we do not have a copy of the underlying court order, we are unable to determine either the factual basis for the withdrawal notification, or whether Appellant has been afforded an adequate

---

[3]In assessing the risk of erroneous deprivation of property, the Supreme Court in *Harrell* considered the risk to be "modest" because notice under the statute is "based on an *amount* identified in a prior *court document*." *Harrell,* 286 S.W.3d at 320 (emphasis added). The Court went on to comment that the risk would be minimized if the trial court included a copy of the underlying order or judgment that assessed costs when it issues a withdrawal notification. We wholeheartedly adopt the Supreme Court's recommendation in this regard. We express no opinion as to whether a clerk issued bill of costs or a statement in an underlying court document which merely assesses "costs of court" against the defendant without stating the basis or amount of those costs constitutes adequate notice for purposes of due process. We further note that the mere assessment of attorney fees does not make them collectable through this process. Under article 26.05(g) of the Texas Code of Criminal Procedure, the trial court has authority to order reimbursement of appointed attorney fees only if the court makes a fact-specific determination that a defendant has financial resources that enable him to offset, in part or in whole, the costs of the legal services provided. *See* Tex. Code Crim. Proc. Ann. art. 26.05(g) (Vernon Supp. 2009). *See also Mayer v. State,* ___ S.W.3d ___, PD-0069-09, 2010 WL 1050331, at *4 (Tex.Crim.App. March 24, 2010).

[4]While the court of appeals's opinion is silent on whether a hearing was held on Harrell's motion to rescind, *Harrell v. State*, Nos. 07-06-0469-CR, 07-06-0470-CR, 2007 WL 2301350 (Tex.App.--Amarillo, Aug. 13, 2007), *rev'd*, 286 S.W.3d 315 (Tex. 2008), the trial court did enter a specific order denying his motion to rescind the withdrawal notification. We read the Supreme Court's opinion as assuming that, by this process, Harrell was given "an opportunity to be heard." *Harrell,* 286 S.W.3d at 321.

5

opportunity "to compare the amounts assessed by the trial court [in the underlying criminal proceedings] to the amount[s] withdrawn and alert the court of any alleged errors." *Id.* Because the trial court has not entered an appealable order either granting or denying a motion to confirm, modify, correct, or rescind the prior withdrawal notification, we find Appellant's *notice of appeal* to be premature.

Accordingly, this Court *sua sponte* abates this appeal for 180 days from the date of this order to allow Appellant time to take such action as is necessary to (1) obtain the necessary documentation of the underlying court order; (2) compare the underlying court order to the withdrawal notification; (3) file an appropriate motion to modify, correct, or rescind the withdrawal notification; (4) present that motion to the trial court; (5) schedule any necessary hearing; and (6) obtain from the trial court a final appealable order addressing that motion. *See* Tex. R. App. P. 27.2. *See also Iacono v. Lyons,* 6 S.W.3d 715 (Tex.App.--Houston [1st Dist.] 1999, no pet.). All appellate timetables will begin to run from the date a final, appealable order is signed.

It is so ordered.


Per Curiam


6