# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

### NO. 03-15-00121-CR

**Tom Benson, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY
### NO. C-1-CV-14-002294, HONORABLE TODD T. WONG, JUDGE PRESIDING

### O P I N I O N

This is an appeal from a final judgment in a bond-forfeiture suit. Roy Whipple, the principal, was charged with a misdemeanor offense in Travis County. Appellant Tom Benson, the surety, filed a bond conditioned on Whipple's subsequent appearance. Whipple later failed to appear in court as required. Consequently, the trial court issued a judgment nisi and declared the bond forfeited. *See* Tex. Code Crim. Proc. art. 22.02.

The State later filed a motion for summary judgment contending that it had established every element of its bond-forfeiture claim as a matter of law and asked the trial court to finalize the judgment. In response, Benson raised the affirmative defense provided by Texas Code of Criminal Procedure article 22.13(a)(5)(A), which states:

> The following causes, and no other, will exonerate the defendant and his sureties, if any, from liability upon the forfeiture taken:

> The incarceration of the principal in any jurisdiction in the United States:

> in the case of a misdemeanor, at the time of or not later than the 180th day after the date of the principal's failure to appear in court.

*Id.* art. 22.13(a)(5)(A). Benson presented evidence that Whipple had been incarcerated in Las Vegas, Nevada, within 180 days of his failure to appear in Travis County.[1]

The trial court granted the State's motion for summary judgment, and this appeal followed. In his sole point of error, Benson argues that the trial court erred by granting the State's motion for summary judgment because he raised a genuine issue of material fact with respect to each element of his affirmative defense. We agree with Benson and will reverse.

## STANDARD OF REVIEW

Although bond-forfeiture proceedings are criminal cases, appellate review of bond-forfeiture proceedings is governed by the same rules as civil suits. *See id.* art. 44.44; *Alvarez v. State*, 861 S.W.2d 878, 881 (Tex. Crim. App. 1992) (per curiam); *Mendez v. State*, No. 03-12-00201-CV, 2013 WL 5936624, at *1 n.1 (Tex. App.—Austin Oct. 31, 2013, no pet.) (mem. op.). The appellate court reviews a summary judgment de novo and it takes as true all evidence favorable to the nonmoving party. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). When moving for summary judgment in a bond-forfeiture case, the State has the burden of establishing that there is no genuine issue of material fact as to any of the essential elements of the State's cause of action and that it is entitled to judgment as a matter of law. *Alvarez*, 861 S.W.2d at 880. The

---

[1] Specifically, Benson produced a "Custody Letter" from the Las Vegas Metropolitan Police Department confirming that Whipple had been incarcerated.

elements of the State's cause of action are the following: (1) there was a valid bond; (2) the defendant's name was distinctly called at the courthouse door; and (3) the defendant failed to appear within a reasonable time of that call. *See id.* at 881 (construing Tex. Code Crim. Proc. art. 22.02). The burden of proof on the second and third elements is satisfied by the judgment nisi. *Id.* Once the State establishes through the bond and the judgment nisi that there are no genuine issues of material fact, the burden shifts to the defendant to raise a fact issue on the affirmative defense of exoneration. *Hill v. State*, 955 S.W.2d 96, 100 (Tex. Crim. App. 1997). A party seeking to avoid summary judgment by virtue of an affirmative defense bears the burden of raising a material issue of fact on each element of that defense. *See id.* at 101 (citing *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984)).

This dispute requires us to interpret Texas Code of Criminal Procedure article 22.13. The meaning of a statute is a legal question, which we review de novo. *Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009). When construing a statute, our primary objective is to ascertain and give effect to the legislature's intent. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631–32 (Tex. 2008). In determining legislative intent, we first consider the plain language of the statute. *General Motors Corp. v. Bray*, 243 S.W.3d 678, 685 (Tex. App.—Austin 2007, no pet.). When statutory text is clear, it is determinative of legislative intent, unless enforcing the plain meaning of the statute's words would produce an absurd result. *Summers*, 282 S.W.3d at 437. Only when the statutory text is ambiguous do we "'resort to rules of construction or extrinsic aids.'" *Id.* (quoting *In re Estate of Nash*, 220 S.W.3d 914, 917 (Tex. 2007)).

**DISCUSSION**

In arguing that the trial court erred in granting summary judgment on the State's claim, Benson admits that the State presented a prima facie case for bond forfeiture by producing evidence of the bail bond and judgment nisi. *See Alvarez*, 861 S.W.2d at 880–81 ("The essential elements of the State's cause of action in a bond forfeiture proceeding are the bond and the judicial declaration of the forfeiture of the bond, which is the judgment nisi."). However, Benson contends that the trial court erred in granting summary judgment because he presented evidence sufficient to raise a fact issue as to each of the elements of the affirmative defense provided by Texas Code of Criminal Procedure article 22.13(a)(5)(A). According to Benson, this defense requires four elements: The principal, (1) who is charged with a misdemeanor, (2) is incarcerated (3) in any jurisdiction in the United States (4) at the time of or not later than the 180th day after the date of the principal's failure to appear in court. Benson asserts that he has raised a fact issue as to each of these four elements because he presented evidence that Whipple was charged with a misdemeanor in Travis County and was later incarcerated in Las Vegas within 180 days from the date he failed to appear in court.

In response, the State does not contend that Benson failed to raise a fact issue on the four elements of his article 22.13(a)(5) defense as identified by Benson. Instead, it argues that article 22.13(b) adds a required element to Benson's defense—that the principal be returned to the county of prosecution before the surety can be exonerated from liability. Specifically, the State points out that article 22.13(b) provides:

> A surety exonerated under Subdivision 5, Subsection (a), remains obligated to pay
> costs of court, any reasonable and necessary costs incurred by a county to secure the

4

return of the principal, and interest accrued on the bond amount from the date of the judgment nisi to the date of the principal's incarceration.

Tex. Code Crim. Proc. art. 22.13(b). The State further argues that Benson did not raise an issue of fact concerning this element of his defense under article 22.13(a).

Because the State has not disputed the evidence supporting the other elements of Benson's defense, and because Benson has not alleged that he returned Whipple to Travis County, our resolution of this appeal turns on a single question of statutory construction: whether article 22.13(a)(5), read in conjunction with article 22.13(b), requires that the principal be returned to the county of prosecution in order for the defendant and surety to be exonerated from liability upon the forfeited bond. This appears to be an issue of first impression in Texas.

The plain language of article 22.13(a) and article 22.13(b) compels us to conclude that the requirements of subsection (b) are not intended to be included as elements of the cause of exoneration under article 22.13(a)(5). Article 22.13(a) lists five exclusive means of exoneration from bond forfeiture. *See id.* art. 22.13(a) ("The following causes, and no other, will exonerate the defendant and his sureties, if any, from liability upon the forfeiture taken."). Only one of these five causes—article 22.13(a)(3)—explicitly makes the principal's return a requirement. *See id.* art. 22.13(a)(3) (allowing for the surety's exoneration if principal's failure to appear in court was because of "some uncontrollable circumstance" but only if "such principal appear before final judgment on the bond to answer the accusation against him, or show sufficient cause for not so appearing"). If the legislature had intended return of the principal to be an element of the defense that subsection (a)(5)(A) provides, it could have included it in that subsection, as well. It certainly knew how to create such a requirement, as evidenced by article 22.13(a)(3), but chose not to do

5

so here. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011) ("We presume that the Legislature chooses a statute's language with care, including each word chosen for a purpose, while purposefully omitting words not chosen."); *Riverside Nat'l Bank v. Lewis*, 603 S.W.2d 169, 175 (Tex. 1980) (explaining that because legislature knew how to include terms within statutory definition and did not do so, statutory definition did not include terms "in light of [the term's] contemporaneous inclusion of the same terms in a separate provision").

Rather than adding a requirement to exoneration under article 22.13(a)(5), article 22.13(b) assumes that exoneration has already occurred. Subsection (b) begins by stating that "a surety exonerated under Subdivision 5, Subsection (a)" remains responsible for court costs, reimbursement of the costs incurred by the county to secure return of the principal, and interest on the bond amount. Tex. Code Crim. Proc. art. 22.13(b). This language does not make exoneration conditional on payment of these amounts; instead, it assumes exoneration and adds these amounts as further obligations of the surety once exoneration has occurred. The State appears to take the position that return of the principal is a condition precedent to exoneration; however, it ignores the fact that payment of the county's costs in returning the principal is but one of three different categories of costs listed. There is nothing in the language of the statute that remotely suggests the requirement that the surety pay costs for return of the principal, by itself, somehow becomes an element of the cause of exoneration.[2]

---

[2] Our interpretation of article 22.13(b) as not requiring return of the principal is bolstered by the fact that article 17.16, which contains very similar language, does not require the principal's return in order for the surety to be relieved from liability before the bond is forfeited. Article 17.16 provides that "[a] surety may before forfeiture relieve the surety of the surety's undertaking by . . . delivering to the sheriff of the county in which the prosecution is pending and to the office of the

6

The State argues that the court of criminal appeals opinion in *Safety National*, in which the State challenged the constitutionality of articles 22.13(a)(5) and 22.16(a), supports its construction of article 22.13. *See Safety Nat'l Cas. Corp. v. State*, 273 S.W.3d 157 (Tex. Crim. App. 2008). However, nothing in *Safety National* states that the principal must have already been returned in order for the surety to be exonerated from liability. As the court of criminal appeals explained, "[t]he point of Article 22.13(a)(5) is that, if the defendant is incarcerated when or shortly after he failed to appear, securing his return to appear is quite easy and does not require the assistance of a bondsman." *Id.* at 164. This statement underscores the court of criminal appeals's reasoning that the return of the principal is certain when he is incarcerated within the United States because the State, and not the surety, has the authority to secure his return. *Cf.* Tex. Code Crim. Proc. art. 17.16(c)

---

prosecuting attorney an affidavit stating that the accused is incarcerated in federal custody, in the custody of any state, or in any county of this state." Tex. Code Crim. Proc. art. 17.16(a)(2). The article also provides that, "[f]or the purposes of Subsection (a)(2) of this article, the bond is discharged and the surety is absolved of liability on the bond on the verification of the incarceration of the accused." *Id.* art. 17.16(e). In other words, there is no requirement that the principal be returned to the county of prosecution before the surety is relieved of liability under article 17.16. *See Allegheny Cas. Co. v. State*, 163 S.W.3d 220, 226 (Tex. App.—El Paso 2005, no pet.) ("There is no requirement that the surety notify the trial court, or anyone else, that the bond has been surrendered or to request that a detainer or arrest warrant be entered so that the principal is subject to return to the sending jurisdiction.") (citing *Castaneda v. State*, 138 S.W.3d 304, 308 (Tex. Crim. App. 2003)).

Yet article 17.16 also states, "A surety is liable for all reasonable and necessary expenses incurred in returning the accused into the custody of the sheriff of the county in which the prosecution is pending." Tex. Code Crim. Proc. art. 17.16(g). This language is almost identical to that of article 22.13(b) upon which the State relies. In article 17.16, the fact that a surety remains liable for any costs incurred in the return of the principal to the county of prosecution does not mean that this return is a requirement for the surety's release from liability. This language further indicates that the legislature does not require a surety to return the principal before being released from liability on the bond.

7

(providing mechanism by which the State can secure return of the principal). We conclude that *Safety National* provides no support for the State's interpretation of article 22.13.[3]

Because we conclude that neither article 22.13(a)(5) nor article 22.13(b) requires that the principal be returned to the county of prosecution in order for the surety to be exonerated from liability for a forfeited bond, and because we further conclude that Benson has raised a genuine issue of material fact on every element of his affirmative defense under article 22.13(a)(5), we sustain Benson's point of error.

## CONCLUSION

We reverse the trial court's grant of summary judgment and remand this cause to the trial court for further proceedings consistent with this opinion.

_____

Scott K. Field, Justice

Before Chief Justice Rose, Justices Goodwin and Field

Reversed and Remanded

Filed: August 31, 2015

Publish

---

[3] Relying on legislative history, the State also argues that article 22.13 fails to fulfill the primary purpose of bail bonds unless it requires that the principal be returned to the county of prosecution. However, because article 22.13 is not ambiguous, we need not address legislative history. *See Entergy Gulf States, Inc. v. Summers*, 282 S.W.3d 433, 437 (Tex. 2009).