**Walter E. HARRELL, Petitioner,**

**v.**

**The STATE of Texas, Respondent.**

**No. 07–0806.**

Supreme Court of Texas.

June 5, 2009.

---

Walter E. Harrell, Snyder, TX, pro se.

James Caleb Scott, Slates Collins Veazey, Gardere Wynne Sewell LLP, Dallas, TX, for Petitioner.

Ramon Gallegos, District Attorney of Terry County, Jason Bujnosek, Assistant Terry County Atty., Brownfield, TX, for Respondent.

Sharon Felfe Howell, Office of General Counsel, TDCJ, Huntsville, TX, Allan Kennedy Cook, Assistant Atty. Gen., Austin, TX, for Amicus Curiae.

Justice WILLETT delivered the opinion of the Court.

In this case, we examine whether a court order directing prison officials to withdraw money from an inmate trust account is a civil or criminal matter and, if civil, what process is due an inmate when such an order is issued. We conclude that proceedings under Government Code section 501.014(e) to recover court fees and costs assessed against inmates are civil in nature and not part of the underlying criminal case. Such post-judgment collection efforts are designed to reimburse the State, not to punish the inmate, and due process is satisfied if the inmate receives notice and the opportunity to be heard after funds are withdrawn. Accordingly, we reverse the court of appeals' judgment and render judgment affirming the trial court's order denying the inmate's objections to the withdrawal orders.[1]

---

1. This opinion uses the term "withdrawal order" since that is what the trial court entered in this case. However, the controlling statute describes the trigger as "notification by a court"—something that informs prison officials of an inmate's obligations and directs

## I. Background

Walter Harrell pled guilty to drug charges in 1997 and 2003. In 2006 the convicting trial court issued orders directing the Texas Department of Criminal Justice (TDCJ) to withdraw $748 from Harrell's inmate trust account to pay for court costs and appointed-counsel fees related to the earlier proceedings.[2]

The court sent copies of its withdrawal orders to Harrell, who moved to rescind them on grounds he was denied due process,[3] specifically the opportunity to present evidence of his inability to pay the assessed costs. The trial court denied Harrell's motion, and the court of appeals dismissed his appeal for lack of jurisdiction, citing its earlier holding in *Gross v. State*[4] that there is no statutory mechanism for appealing a withdrawal order.

In this appeal, Harrell does not challenge the amount of fees and costs originally assessed in his criminal cases or the authority of the trial court to assess them, nor does he claim that the withdrawal orders totaling $748 do not match the amounts originally assessed. His position is simply stated: "The State gave Harrell notice and an opportunity to be heard when it came to his liberty. However, when it came to his property, the State just took it."

## II. Jurisdiction: Is This a Civil or Criminal Matter?

We cannot address Harrell's due-process claim if we lack jurisdiction. "Courts always have jurisdiction to determine their own jurisdiction."[5]

The Texas Constitution gives us jurisdiction in "all cases except in criminal law matters."[6] We therefore consider whether an inmate trust fund withdrawal order is a civil or criminal matter. If the former, we have jurisdiction to reach the due-process issue; if the latter, jurisdiction rests, if anywhere, with our sister high court, the Court of Criminal Appeals.[7]

Four Texas courts of appeals have divided 2–2 over whether a section 501.014(e) order is civil or criminal. The Waco and Amarillo courts of appeals have declared them criminal in nature as they arise from and are closely related to a criminal matter.[8] The San Antonio and Texarkana courts of appeals have reached the oppo-

officials to withdraw funds. *See* Tex. Gov't Code § 501.014(e).

2. Inmate trust accounts are authorized by Government Code section 501.014(a), styled "Inmate Money":

The department shall take possession of all money that an inmate has on the inmate's person or that is received with the inmate when the inmate arrives at a facility to be admitted to the custody of the department and all money the inmate receives at the department during confinement and shall credit the money to an account created for the inmate. . . .

Amicus curiae TDCJ notes it began receiving withdrawal orders in June 2005, something it attributes to the passage that year of article 103.0033 of the Code of Criminal Procedure ("Collection Improvement Program"), which requires larger cities and municipalities to boost collections of court costs, fees, and fines imposed in criminal cases. *See* Act of May 29, 2005, 79th Leg., R.S., ch. 899, § 10.01, 2005 Tex. Gen. Laws 3098, 3107.

3. *See* U.S. Const. amend. XIV, § 1; Tex. Const. art. I, § 19.

4. 279 S.W.3d 791, 794 (Tex.App.-Amarillo 2007, no pet.).

5. *Houston Mun. Employees Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158 (Tex.2007).

6. Tex. Const. art. V, § 3(a).

7. *Id.* § 5.

8. *See Zink v. State*, 244 S.W.3d 508, 509 (Tex. App.-Waco 2007, no pet.); *Gross*, 279 S.W.3d at 794.

site conclusion, reasoning that withdrawal orders are a post-judgment collection process distinct from the underlying criminal case.[9]

This split of authority has led inmates to file appeals both in this Court and in the Court of Criminal Appeals, which recently addressed the jurisdictional issue in *In re Johnson*.[10] In that case, the Court of Criminal Appeals examined its own jurisprudence and the risk of "a potential conflict between our bifurcated highest appellate courts" in deciding that withdrawal orders were not criminal-law matters.[11]

We agree that withdrawal orders are more civil in nature than criminal. We start with the proposition that "[d]isputes which arise over the enforcement of statutes governed by the Texas Code of Criminal Procedure, and which arise as a result of or incident to a criminal prosecution, are criminal law matters."[12] Further, we observe that in criminal-law matters, "criminal law is the subject of the litigation."[13]

The withdrawal orders here—issued nine years after Harrell's first conviction and three years after his second—may be incidental to criminal prosecutions and a mechanism to enforce criminal judgments, but they do not arise over enforcement of a statute governed by the Code of Criminal Procedure. Nor is criminal law the focus of this action. True, a withdrawal order does seize payment for costs previously taxed in a criminal case, but the criminal case is over. Harrell is not contesting the convicting court's authority to *assess* costs but its authority to *collect* costs. And those costs are collected, as the two orders in this case make clear, "pursuant to Government Code, Sec. 501.014," not any provision in the Code of Criminal Procedure nor any other criminal statute.

Section 501.014 includes costs assessed during criminal matters, but it also authorizes inmate-account withdrawals for costs arising in civil proceedings, including payment of child support, restitution, health care costs, and fines.[14] Even as to

---

9. *See Reed v. State*, 269 S.W.3d 619, 623–24 (Tex.App.-San Antonio 2008, no pet.); *Abdullah v. State*, 211 S.W.3d 938, 940–41 (Tex. App.-Texarkana 2007, no pet.).

10. 280 S.W.3d 866 (Tex.Crim.App.2008) (orig.proceeding).

11. *Id.* at 869–70, 874.

12. *Curry v. Wilson*, 853 S.W.2d 40, 43 (Tex. Crim.App.1993).

13. *Smith v. Flack*, 728 S.W.2d 784, 788 (Tex. Crim.App.1987).

14. Government Code section 501.014(e) states:

(e) On notification by a court, the department shall withdraw from an inmate's account any amount the inmate is ordered to pay by order of the court under this subsection. The department shall make a payment under this subsection as ordered by the court to either the court or the party specified in the court order. The department is not liable for withdrawing or failing to withdraw money or making payments or failing to make payments under this subsection. The department shall make withdrawals and payments from an inmate's account under this subsection according to the following schedule of priorities:

(1) as payment in full for all orders for child support;

(2) as payment in full for all orders for restitution;

(3) as payment in full for all orders for reimbursement of the Texas Department of Human Services for financial assistance provided for the child's health needs under Chapter 31, Human Resources Code, to a child of the inmate;

(4) as payment in full for all orders for court fees and costs;

(5) as payment in full for all orders for fines; and

(6) as payment in full for any other court order, judgment, or writ.

court fees and costs, the statute applies not just to criminal cases but to "all orders for court fees and costs." [15] Moreover, the subject matter of this appeal does not concern Harrell's guilt, innocence, or punishment, the chief features of a criminal proceeding. [16] The procedure at issue is substantively akin to a garnishment action or an action to obtain a turnover order. Properly viewed, it is a civil post-judgment collection action that is (1) distinct from the underlying criminal judgments assessing Harrell's conviction, sentence, and court costs, and (2) aimed at seizing funds to satisfy the monetary portion of those judgments. The court is enforcing a money judgment that, while tangentially related to the underlying criminal judgments, is nonetheless removed from them.

At bottom, Harrell is alleging the alleged wrongful taking of property. Given that this case presents no construction of a criminal statute, and instead presents the issue of a trial court's ability to seize funds post-judgment pursuant to a civil statute, we hold that withdrawal orders are more substantively civil than criminal. We now turn to the merits of Harrell's due-process claim.

## III. What Process is Due?

■ Harrell argues the two withdrawal orders violated his procedural due-process rights to notice and an opportunity to be heard. [17] In evaluating this argument, we first determine whether Harrell has a property or liberty interest that merits protection. [18] Texas courts have long recognized that prisoners have a property interest in their inmate trust accounts. [19] In light of Harrell's property right, we now consider what process is due to Harrell. [20]

■ "The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances." [21] To determine what amount of process Harrell is due, we balance the three factors announced by the United States Supreme Court in *Mathews v. Eldridge:*

First, the private interest that will be affected by the official action;

[S]econd, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and

[F]inally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural

15. *Id.* (e)(4).

16. *See* BLACK'S LAW DICTIONARY 1241 (8th ed.2004) (defining "criminal proceeding" as "[a] proceeding instituted to determine a person's guilt or innocence or to set a convicted person's punishment . . .").

17. Insofar as Harrell's briefing suggests that his account funds are immune from seizure due to his indigency, we reject this argument. Harrell presents no authority, nor can we locate any, that due process mandates a minimal funding of an inmate trust account that is immune from execution to cover court costs.

18. *Univ. of Tex. Med. Sch. at Houston v. Than,* 901 S.W.2d 926, 929 (Tex.1995).

19. *See Reed v. State,* 269 S.W.3d 619, 625 (Tex.App.-San Antonio 2008, no pet.); *Abdullah v. State,* 211 S.W.3d 938, 943 (Tex.App.-Texarkana 2007, no pet.); *Covarrubias v. Tex. Dep't of Criminal Justice–Inst. Div.,* 52 S.W.3d 318, 324 (Tex.App.-Corpus Christi 2001, no pet.); *Brewer v. Collins,* 857 S.W.2d 819, 823 (Tex.App.-Houston [1st Dist.] 1993, no writ).

20. *Than,* 901 S.W.2d at 929.

21. *Landon v. Plasencia,* 459 U.S. 21, 34, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982).

requirement would entail.[22]

As to the first factor, the private interest affected can be stated with exactness: Harrell's $748. The second factor—the risk of erroneous deprivation—cannot be measured as precisely, but any risk is modest, as withdrawal notifications under the statute are based on an amount identified in a prior court document.[23] Harrell was party to the underlying action and notified of the costs assessed when the convicting court sentenced him. If he believed they were erroneous, he was free to contest them at the time they were assessed. He did not. We are mindful, however, of other cases where the amount in the withdrawal order varied from the amount in the underlying criminal judgment.[24] Accordingly, there is some risk of the erroneous deprivation of an inmate's property.[25]

Turning to factor three, we assess the government's interest, including the fiscal and administrative burdens of added or alternative procedures. The State's interest is the efficient recoupment of court costs.[26] The State provides legal services to indigent criminal defendants who cannot afford counsel, and if it later turns out the person can contribute to his own defense, the State has an interest in ensuring taxpayers are reimbursed for the expenses they incurred.[27]

Nothing in Texas law requires the grafting of comprehensive garnishment procedures onto Government Code section 501.014.[28] If TDCJ were required to conform strictly with full-blown statutory garnishment requirements as suggested by the Texarkana court of appeals in *Abdullah*,[29] TDCJ would doubtless face expending more money than it would ever collect in many cases, since withdrawal orders typically seek modest sums. Faced with this cost-benefit tradeoff, TDCJ would likely opt not to seek recoupment at all, thus subverting the Legislature's goal of efficient cost-collection.

In balancing the three *Mathews* factors, we note that Harrell has already received some measure of due process. The determination of indigency and the taxing of costs occurred as part of the two criminal cases against him. Thus, as to whether Harrell is indigent and the amount of costs to be levied against him, he has already received all that due process demands.

However, there remains a risk of erroneous deprivation via clerical and other

**22.** 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

**23.** *See* Tex. Gov't Code § 501.014(e)(1)-(6).

**24.** *See, e.g., In re Martinez,* 238 S.W.3d 601, 602 (Tex.App.-Waco 2007, orig. proceeding) (criminal judgment had costs at $308, but withdrawal order was for $7,317.47); *Crawford v. State,* 226 S.W.3d 688, 691 (Tex.App.-Waco 2007, no pet.) (Gray, C.J., dissenting) (Appendix B) (criminal judgment had costs at $198, but withdrawal order was for $1,142); *Abdullah v. State,* 211 S.W.3d 938, 940 (Tex. App.-Texarkana 2007, no pet.) (line in criminal judgment for costs was blank, but withdrawal order was for $1,517.25).

**25.** Such a risk could be minimized if the trial court includes a copy of the original judgment that assessed costs when it sends a withdrawal order to TDCJ.

**26.** *See* Code Crim. Proc. art. 103.0033.

**27.** *See Curry v. Wilson,* 853 S.W.2d 40, 45–46 (Tex.Crim.App.1993).

**28.** Although Texas Civil Practice and Remedies Code section 63.007 permits writs of garnishment against inmate trust funds, that provision—a waiver of immunity so outside creditors can pursue inmate funds—has no application here, where the judgment creditor (the State of Texas) and the third party holding the funds (TDCJ) are essentially one and the same.

**29.** 211 S.W.3d at 940.

errors. As noted above, some withdrawal orders have authorized the seizure of more money than was taxed in the original criminal judgment. An inmate should have a chance to compare the amount assessed to the amount withdrawn and alert the issuing court of any alleged errors.

 We hold an inmate is entitled to notice just as happened here (via copy of the order, or other notification, from the trial court) and an opportunity to be heard just as happened here (via motion made by the inmate)—but neither need occur before the funds are withdrawn.[30] Moreover, appellate review should be by appeal, as in analogous civil post-judgment enforcement actions.

In this case, Harrell received notice of the trial court's withdrawal order on the same day TDCJ received copies of the order. The Constitution does not require pre-withdrawal notice or a comprehensive civil garnishment proceeding. Harrell received notice contemporaneously with the withdrawal orders and had his concerns considered by the trial court that issued them. Due process requires nothing more.

## IV. Conclusion

We reverse the court of appeals' judgment dismissing Harrell's appeal for want of jurisdiction. Section 501.014(e) proceedings to withdraw funds from inmate trust accounts are civil in nature, not criminal. However, because Harrell received all that due process requires, post-withdrawal notice and hearing, we render judgment affirming the trial court's order denying his motion to rescind the withdrawal orders.

---

**30.** Although the convicting court in this case hears both civil and criminal matters, a few district courts in urban counties are designated as "criminal district courts." Still, under the Texas Constitution, those criminal district courts can hear "all actions, proceedings, and remedies." TEX CONST. art. V, § 8. And while the Legislature has deemed that some district courts shall give preference to criminal law matters, *see, e.g.,* TEX. GOV'T CODE § 24.474, it cannot completely eliminate a district court's civil constitutional jurisdiction. *See Lord v. Clayton,* 163 Tex. 62, 352 S.W.2d 718, 721–22 (1961). Further, all trial courts have inherent authority to enforce their own judgments. *See Arndt v. Farris,* 633 S.W.2d 497, 499 (Tex. 1982) ("The general rule is that every court having jurisdiction to render a judgment has the inherent power to enforce its judgments."); *see also* TEX R. CIV. P. 308 ("The court shall cause its judgments and decrees to be carried into execution ..."). Thus, while we categorize withdrawal orders as civil, a "criminal district court" has jurisdiction to issue such orders and to hear any inmate challenges to them.