NO. 07-10-0181-CV

NO.
07-10-0182-CV

NO.
07-10-0183-CV

 

IN
THE COURT OF APPEALS

 

FOR
THE SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL
C

 

MAY 19, 2010

 

______________________________

 

 

BENNY
JOE PALOMO, APPELLANT

 

V.

 

THE
STATE OF TEXAS, APPELLEE

 

 

_________________________________

 

FROM
THE 181ST DISTRICT COURT OF RANDALL COUNTY;

 

NOS.
18,223-B, 18,368-B, & 18,369-B; HONORABLE JOHN B. BOARD, JUDGE

 

_______________________________

 

Before QUINN,
C.J., and HANCOCK and PIRTLE, JJ.

OPINION ON ABATEMENT

            On
February 25, 2010, in each referenced cause, pursuant to § 501.014(e) of the Texas Government
Code, the trial court signed and entered an Order to Withdraw Inmate Funds.[1]  By
the withdrawal notifications entered in each cause, the trial court directed
the Texas Department of Criminal Justice Institutional Division to withhold the
following amounts: (1) $1,810.31 in cause number 18,223-B; (2) $616.50 in cause
number 18,368-B; and (3) $616.50 in cause number 18,369-B.  Appellant filed pro se notices of appeal on
May 5, 2010, challenging the withdrawal notifications.  While
each withdrawal notification contained the statement that "court costs,
fines and fees have been incurred as represented in the certified Bill of Cost/Judgment
attached hereto," none contained an attachment of any kind.  Furthermore, while the judgment entered in
each case provides that "the State of Texas do have and recover of said
[Appellant] all court costs in this prosecution expended . . . ," the
summary portion of each judgment leaves costs blank.

            In Harrell v. State, 286 S.W.3d 315 (Tex. 2008), the Texas Supreme
Court held that a withdrawal notification directing prison officials to
withdraw money from an inmate trust account pursuant to § 501.014(e) is a civil matter[2]
akin to a garnishment action or an action to obtain a turnover order.  Harrell, 286 S.W.3d at 317-19.  In determining whether Harrell was accorded
constitutional due process in that proceeding, the Court balanced three factors
discussed in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and noted that Harrell had "already
received some measure of due process." 
Harrell, 286
S.W.3d at 320.

            The
three Eldridge factors considered in Harrell are: (1) the private interest
affected by the official action, (2) the risk of an erroneous deprivation of
such interests through the procedures used, and the probable value, if any, of
additional or substitute procedural safeguards, and (3) the Government's
interest, including the function involved and the fiscal and administrative
burdens that additional or substitute procedural requirements would
entail.  The Court found that private
interest to be easily ascertainable--"the amount identified in a prior
court document", i.e., "the costs assessed when the convicting court
sentenced him."  Harrell, 286 S.W.3d at 320.  Regarding
the risk of erroneous deprivation, the Court identified the risk as modest
where withdrawal notifications under the statute are based on an amount
identified in a previous court document. 
See Tex. Gov't Code Ann. §
501.014(e)(1)-(6) (Vernon Supp. 2009).  The Court noted that "Harrell was . . .
notified of the costs assessed when the convicting court sentenced him"
and he was free to contest them at the time they were assessed. Harrell, 286 S.W.3d at
320.  However, the Court went on
to recognize there could be a greater risk of erroneous deprivation in
instances in which the amount in the withdrawal notification varied from the
amount in the underlying judgment or those instances where there were clerical
or other errors.  Id.  In assessing the final
factor, the Government's interest, the Court addressed the fiscal and
administrative burdens of added or alternative procedures and concluded that
the Texas Department of Criminal Justice would face expending more money than
it would collect if it were required to conform to "full-blown"
statutory garnishment requirements.  In
the Court's opinion, such a drawn-out procedure might subvert the Legislature's
goal of efficient cost-collection.  Id.

Harrell had
been convicted of drug charges in 1997 and 2003.  In 2006, the convicting trial court signed an
order authorizing the Texas Department of Criminal Justice Institutional
Division to withdraw funds from his inmate trust account to pay for court costs
and fees for appointed counsel.  Harrell
was provided with copies of the withdrawal notifications.  He then moved to rescind the withdrawal
notifications alleging denial of due process. 
His motion was denied, and his direct appeal to this Court was dismissed
for want of jurisdiction on the ground that no statutory mechanism was
available for appealing a withdrawal notification.  See
Harrell v. State, Nos. 07-06-0469-CR and 07-06-0470-CR, 2007 Tex. App.
LEXIS 6416, at *3 (Tex.App.--Amarillo Aug. 13, 2007), rev'd, 286 S.W.3d 315 (Tex.
2008). 

            In reversing this Court and
rendering judgment affirming the trial court's order denying Harrell's motion to rescind, the Supreme Court held
that due process entitles an inmate to receive notice[3] and an
opportunity to be heard, even though those requirements might be accorded the
inmate after funds are withdrawn.  Harrell, 286 S.W.3d at
321.  It concluded that because
Harrell had received notice (a copy of the withdrawal
notification) and an opportunity
to be heard[4] (the
motion to rescind), he had received all that due process
required.  Id.  The Court added,
"[t]he Constitution does not require pre-withdrawal notice or a
comprehensive civil garnishment proceeding."  Id.

             On the limited record before this Court, we
are unable to determine if Appellant has been given all that due process
requires.  Specifically, we are unable to
determine whether Appellant has been (1) provided with the necessary underlying
documentation and (2) afforded an adequate opportunity "to compare the
amounts assessed by the trial court [in the underlying criminal proceedings] to
the amount[s] withdrawn and alert the court of any alleged errors."  Id.  Because the trial court has not entered
an appealable order either granting or denying a motion to confirm, modify,
correct, or rescind the prior withdrawal notification, we find Appellant's notices of appeal to be premature.  See Williams
v. State, __ S.W.3d __, Nos. 07-10-0091-CV, 07-10-0100-CV, and 07-10-0101,
2010 Tex. App. LEXIS, 2998, at *8-9, (Tex.App.--Amarillo April 22, 2010, no
pet. h.).

            Accordingly, this Court sua sponte abates this appeal for 180
days from the date of this order to allow Appellant time to take such action as
is necessary to (1) obtain the necessary documentation of the underlying court
order; (2) compare the underlying court order to the withdrawal notification;
(3) file an appropriate motion to modify, correct, or rescind the withdrawal
notification; (4) present that motion to the trial court; (5) schedule any
necessary hearing; and (6) obtain from the trial court a final appealable order
addressing that motion.  See Tex. R. App. P. 27.2.  See
also Iacono v. Lyons, 6 S.W.3d 715
(Tex.App.--Houston [1st Dist.] 1999, no pet.). 
All appellate timetables will begin to run from the date a final,
appealable order is signed.

            It is so ordered.

                                                                                    Per
Curiam

 











[1]This
document is not an "order" in the traditional sense of a court order,
judgment, or decree issued after notice and hearing in either a civil or
criminal proceeding.  The controlling
statute, Tex. Gov't Code Ann. §
501.014(e) (Vernon Supp. 2009), describes the process as a "notification
by a court" directing prison officials to withdraw sums from an inmate's
trust account, in accordance with a schedule of priorities set by the statute,
for the payment of "any amount the inmate is ordered to pay by order of
the court."  See id. at § 501.014(e)(1)-(6). 
See also Harrell v. State, 286
S.W.3d 315, 316, n.1 (Tex. 2009).  This
document is more akin to a judgment nisi. 
A judgment nisi, commonly used in bond forfeiture proceedings, is a
provisional judgment entered when an accused fails to appear for trial.  A judgment nisi triggers the issuance of a capias and it serves as notice of the
institution of a bond forfeiture proceeding. 
It is not final or absolute, but may become final.  See
Safety Nat'l Cas. Corp. v. State, 273 S.W.3d 157, 163
(Tex.Crim.App. 2008). Nisi means "unless," so a
judgment nisi is valid unless a party takes action causing it to be
withdrawn.  Id.  Similarly, a withdrawal
notification issued pursuant to §
501.014(e), triggers a trust fund withdrawal, serves as notice of the
collection proceeding, and continues to operate unless the inmate takes action
causing the notification to be withdrawn. 
Therefore, rather than refer to that document as an order, we prefer to
use the term "withdrawal notification" to avoid confusion with an
underlying court order or judgment ordering the payment of a sum falling within
at least one of the six priority categories listed in the statute.

 





[2]See Johnson v. Tenth Judicial
District Court of Appeals at Waco, 280 S.W.3d 866, 869 (Tex.Crim.App. 2008)
(holding that orders directing withdrawal of funds from inmate trust accounts
is not a criminal matter).

 





[3]In
assessing the risk of erroneous deprivation of property, the Supreme Court in Harrell considered the risk to be
"modest" because notice under the statute is "based on an amount identified in a prior court document."  Harrell,
286 S.W.3d at 320 (emphasis added). 
The Court went on to comment that the risk would be minimized if the
trial court included a copy of the underlying order or judgment that assessed
costs when it issues a withdrawal notification. 
We wholeheartedly adopt the Supreme Court's recommendation in this
regard.  We express no opinion as to
whether a clerk issued bill of costs or a statement in an underlying court
document which merely assesses "costs of court" against the defendant
without stating the basis or amount of those costs constitutes adequate notice
for purposes of due process.  We further
note that the mere assessment of attorney fees does not make them collectable
through this process.  Under article
26.05(g) of the Texas Code of Criminal Procedure, the trial court has authority
to order reimbursement of appointed attorney fees only if the court makes a
fact-specific determination that a defendant has financial resources that
enable him to offset, in part or in whole, the costs of the legal services
provided.  See Tex. Code Crim. Proc. Ann. art.
26.05(g) (Vernon Supp. 2009).  See
also Mayer v. State, ___ S.W.3d ___, No. PD-0069-09, 2010 Tex. Crim. App.
LEXIS 100, at *11  (Tex.Crim.App.
March 24, 2010).





[4]While
the court of appeals's opinion is silent on whether a
hearing was held on Harrell's motion to rescind, Harrell v. State, Nos. 07-06-0469-CR, 07-06-0470-CR, 2007 Tex. App. LEXIS 6416, at *3 (Tex.App.--Amarillo,
Aug. 13, 2007), rev’d,
286 S.W.3d 315 (Tex. 2008), the trial court did enter a specific order denying
his motion to rescind the withdrawal notification.  We read the Supreme Court's opinion as
assuming that, by this process, Harrell was given "an opportunity to be
heard."  Harrell, 286 S.W.3d at 321.