NO. 07-10-00177-CV; 07-10-00178-CV; 07-10-00179-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

MAY 27, 2010

_____

KENNETH GLENN WEBB, APPELLANT

v.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 181ST DISTRICT COURT OF RANDALL COUNTY;

NO. 11,994-B, 18-617-B, 18-618-B; HONORABLE JOHN B. BOARD, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**OPINION ON ABATEMENT**

On February 25, 2010, in each referenced cause, pursuant to section 501.014(e) of the Texas Government Code, the trial court signed and entered an Order to Withdraw Inmate Funds.[1]   By the withdrawal notifications entered in each cause, the trial court

_____

[1]This document is not an "order" in the traditional sense of a court order, judgment, or decree issued after notice and hearing in either a civil or criminal proceeding.  The controlling statute, TEX. GOV'T CODE ANN. § 501.014(e) (Vernon Supp. 2009), describes the process as a "notification by a court" directing prison officials to withdraw sums from an inmate's trust account, in accordance with a schedule of priorities set by the statute, for the payment of "any amount the inmate is ordered to pay by order of the court."  See id. at § 501.014(e)(1)-(6); see also Harrell v. State, 286 S.W.3d 315, 316, n.1 (Tex. 2009).  This document is more akin to a judgment nisi.  A

directed the Texas Department of Criminal Justice, Institutional Division, to withhold from Webb's inmate trust account the following amounts: (1) $3,071.25 in cause number 11,994-B; (2) $1,101.50 in cause number 18,617-B; and (3) $1,096.50 in cause number 18,618-B. Webb filed pro se notices of appeal on April 26, 2010, challenging the withdrawal notifications. While each withdrawal notification contained the statement that "court costs, fines and fees have been incurred as represented in the certified Bill of Cost/Judgment attached hereto," none contained an attachment of any kind. Furthermore, while the judgment entered in cause number 11,994-B does include an order that the State recover "all costs," the judgments in cause numbers 18,617-B and 18,618-B are silent as to the assessment of costs.

In Harrell v. State, 286 S.W.3d 315 (Tex. 2008), the Texas Supreme Court held that a withdrawal notification directing prison officials to withdraw money from an inmate trust account pursuant to section 501.014(e) is a civil matter akin to a garnishment action or an action to obtain a turnover order. Id. at 317-19; see also Johnson v. Tenth Judicial District Court of Appeals at Waco, 280 S.W.3d 866, 869 (Tex.Crim.App. 2008) (holding that orders directing withdrawal of funds from inmate trust accounts are not a

judgment nisi, commonly used in bond forfeiture proceedings, is a provisional judgment entered when an accused fails to appear for trial. A judgment nisi triggers the issuance of a *capias* and it serves as notice of the institution of a bond forfeiture proceeding. It is not final or absolute, but may become final. See Safety Nat'l Cas. Corp. v. State, 273 S.W.3d 157, 163 (Tex.Crim.App. 2008). Nisi means "unless," so a judgment nisi is valid unless a party takes action causing it to be withdrawn. Id. Similarly, a withdrawal notification issued pursuant to section 501.014(e), triggers a trust fund withdrawal, serves as notice of the collection proceeding, and continues to operate unless the inmate takes action causing the notification to be withdrawn. Therefore, rather than refer to that document as an order, we prefer to use the term "withdrawal notification" to avoid confusion with an underlying court order or judgment ordering the payment of a sum falling within at least one of the six priority categories listed in the statute.

2

criminal matter).    In determining whether Harrell was accorded constitutional due process in that proceeding, the Court balanced three factors discussed in Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and noted that Harrell had "already received some measure of due process."  Harrell, 286 S.W.3d at 320.

The three Eldridge factors considered in Harrell are: (1) the private interest affected by the official action, (2) the risk of an erroneous deprivation of such interests through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and (3) the government's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail.  Id. at 319-20 (citing Mathews, 424 U.S. at 335). The Court found the private interest to be affected to be easily ascertainable by reference to the amount identified in a prior court document, which could be "stated with exactness" as "the costs assessed when the convicting court sentenced him."  Id. at 320.   Regarding the risk of erroneous deprivation, the Court identified the risk as modest where withdrawal notifications under the statute are based on an amount identified in a previous court document.  See TEX. GOV'T CODE ANN. § 501.014(e)(1)-(6) (Vernon Supp. 2009).   The Court noted that "Harrell was . . . notified of the costs assessed when the convicting court sentenced him" and he was free to contest them at the time they were assessed.  Harrell, 286 S.W.3d at 320.  However, the Court went on to recognize there could be a greater risk of erroneous deprivation in instances in which the amount in the withdrawal notification varied from the amount in the underlying judgment or those instances where there were clerical or other errors.  Id.  In assessing the final factor, the government's interest, the Court addressed the fiscal and

3

administrative burdens of added or alternative procedures and concluded that the Texas Department of Criminal Justice would face expending more money than it would collect if it were required to conform to "full-blown" statutory garnishment requirements. Id. In the Court's opinion, such a drawn-out procedure might subvert the Legislature's goal of efficient cost-collection. Id.

Harrell had been convicted of drug charges in 1997 and 2003. In 2006, the convicting trial court signed an order authorizing the Texas Department of Criminal Justice, Institutional Division, to withdraw funds from his inmate trust account to pay for court costs and fees for appointed counsel. Harrell was provided with copies of the withdrawal notifications. He then moved to rescind the withdrawal notifications alleging denial of due process. His motion was denied, and his direct appeal to this Court was dismissed for want of jurisdiction on the ground that no statutory mechanism was available for appealing a withdrawal notification. See Harrell v. State, Nos. 07-06-0469-CR, 07-06-0470-CR, 2007 Tex.App. LEXIS 6416, at *3 (Tex.App.--Amarillo Aug. 13, 2007), rev'd, 286 S.W.3d 315 (Tex. 2008).

In reversing this Court and rendering judgment affirming the trial court's Order Denying Harrell's Motion to Rescind, the Supreme Court held that due process entitles an inmate to receive notice[2] and an opportunity to be heard, even though those

---

[2] In assessing the risk of erroneous deprivation of property, the Supreme Court, in Harrell, considered the risk to be "modest" because notice under the statute is "based on an amount identified in a prior court document." Harrell, 286 S.W.3d at 320 (emphasis added). The Court went on to comment that the risk would be minimized if the trial court included a copy of the underlying order or judgment that assessed costs when it issues a withdrawal notification. We wholeheartedly adopt the Supreme Court's recommendation in this regard.

4

requirements might be accorded the inmate after funds are withdrawn. Harrell, 286 S.W.3d at 321. It concluded that because Harrell had received notice (a copy of the withdrawal notification) and an opportunity to be heard[3] (the motion to rescind), he had received all that due process required. Id. The Court added, "[t]he Constitution does not require pre-withdrawal notice or a comprehensive civil garnishment proceeding." Id.

On the limited record before this Court, we are unable to determine if Webb has been given all that due process requires. Specifically, we are unable to determine whether Webb has been (1) provided the necessary underlying documentation, and (2) afforded an adequate opportunity "to compare the amounts assessed by the trial court [in the underlying criminal proceedings] to the amount[s] withdrawn and alert the court of any alleged errors." See id. In that respect, we note that the "risk of an erroneous deprivation of [Webb's] interests through the procedures used" in this particular case is apparent on the face of the documents contained in the Clerk's Record.[4] See id. at 320.

---

We further note that the mere assessment of attorney fees does not make them collectable through this process. Under article 26.05(g) of the Texas Code of Criminal Procedure, the trial court has authority to order reimbursement of appointed attorney fees only if the court makes a fact-specific determination that a defendant has financial resources that enable him to offset, in part or in whole, the costs of the legal services provided. See TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (Vernon Supp. 2009); see also Mayer v. State, No. PD-0069-09, 2010 Tex.Crim.App. LEXIS 100, at *11 (Tex.Crim.App. March 24, 2010).

[3] While the court of appeals's opinion is silent on whether a hearing was held on Harrell's motion to rescind, Harrell, 2007 Tex.App. LEXIS 6416, at *3, the trial court did enter a specific order denying his motion to rescind the withdrawal notification. We read the Supreme Court's opinion as assuming that, by this process, Harrell was given "an opportunity to be heard." Harrell, 286 S.W.3d at 321.

[4] In cause number 11,994-B the withdrawal order commands the Texas Department of Criminal Justice to withdraw $3,071.25, but the Bill of Costs shows the

5

If an appellate court is uncertain about the intent of an order to finally dispose of all claims, it can abate the appeal to permit clarification by the trial court. See TEX. R. APP. P. 27.2. Because the trial court has not entered an appealable order either granting or denying a motion to confirm, modify, correct, or rescind the prior withdrawal notification, we find Webb's notices of appeal to be premature. See Williams v. State, Nos. 07-10-0091-CV, 07-10-0100-CV, 07-10-0101, 2010 Tex.App. LEXIS, 2998, at *8-9, (Tex.App.--Amarillo April 22, 2010, no pet. h.).

Accordingly, this Court *sua sponte* abates this appeal for 180 days from the date of this order to allow Webb time to take such action as is necessary to (1) obtain the necessary documentation of the underlying court order; (2) compare the underlying court order to the withdrawal notification; (3) file an appropriate motion to modify, correct, or rescind the withdrawal notification; (4) present that motion to the trial court; (5) schedule any necessary hearing; and (6) obtain from the trial court a final appealable order addressing that motion. See TEX. R. APP. P. 27.2; see also Iacono v. Lyons, 6 S.W.3d 715 (Tex.App.--Houston [1st Dist.] 1999, no pet.) (finding appeal prematurely filed and abating and remanding to permit the jurisdictional defect to be cured). All appellate timetables will begin to run from the date a final, appealable order is signed.

---

amount due as being $2,908.59. The Bill of Costs also includes $350.00 for attorney's fees. In cause number 18,617-B the withdrawal order was for the sum of $1,101.50, whereas the Bill of Costs reflected an amount due of $938.84, including $800.00 in attorney's fees. Finally, in cause number 18,618-B, the withdrawal order was for the sum of $1,096.50, whereas the Bill of Costs reflected an amount due of $1,072.63, including $800.00 in attorney's fees.

It is so ordered.

Per Curiam