**Charles DeWayne STEPHEN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–10–00494–CV.**

Court of Appeals of Texas, Amarillo, Panel B.

Dec. 16, 2010.

---

2. *See* Tex.Rev.Civ. Stat. Ann. art. 4590i, § 13.01(d) (repealed by Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884).

Charles DeWayne Stephen, Dayton, TX, pro se.

James A. Farren, Criminal District Attorney, Canyon, TX, for Appellee.

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

## OPINION ON ABATEMENT

PER CURIAM.

■ On June 24, 2010, pursuant to section 501.014(e) of the Texas Government Code, the trial court signed and entered an Order to Withdraw Inmate Funds.[1] By the withdrawal notification, the trial court directed the Texas Department of Criminal Justice, Institutional Division, to withhold from Stephen's inmate trust account $1,786.50. Stephen filed pro se notice of

---

1. This document is not an "order" in the traditional sense of a court order, judgment, or decree issued after notice and hearing in either a civil or criminal proceeding. The controlling statute, TEX. GOV'T CODE ANN. § 501.014(e) (Vernon Supp.2009), describes the process as a "notification by a court" directing prison officials to withdraw sums from an inmate's trust account, in accordance with a schedule of priorities set by the statute, for the payment of "any amount the inmate is ordered to pay by order of the court." *See id.* at § 501.014(e)(1)-(6); *see also Harrell v. State,* 286 S.W.3d 315, 316 n. 1 (Tex.2009). This document is more akin to a judgment nisi. A judgment nisi, commonly used in bond forfeiture proceedings, is a provisional judgment entered when an accused fails to appear for trial. A judgment nisi triggers the issuance of a *capias* and it serves as notice of the institution of a bond forfeiture proceeding. It is not final or absolute, but may become final. *See Safety Nat'l Cas. Corp. v. State,* 273 S.W.3d 157, 163 (Tex.Crim.App. 2008). Nisi means "unless," so a judgment nisi is valid unless a party takes action causing it to be withdrawn. *Id.* Similarly, a withdrawal notification issued pursuant to section 501.014(e), triggers a trust fund withdrawal, serves as notice of the collection proceeding, and continues to operate unless the inmate takes action causing the notification to be withdrawn. Therefore, rather than refer to that document as an order, we prefer to use the term "withdrawal notification" to avoid confusion with an underlying court order or judgment ordering the payment of a sum falling within at least one of the six priority categories listed in the statute.

appeal on December 10, 2010, challenging the withdrawal notification. The October 16, 2006 Judgment upon which the withdrawal is based does not assess or order costs.[2]

In *Harrell v. State*, 286 S.W.3d 315 (Tex. 2009), the Texas Supreme Court held that a withdrawal notification directing prison officials to withdraw money from an inmate trust account pursuant to section 501.014(e) is a civil matter akin to a garnishment action or an action to obtain a turnover order. *Id.* at 317–19; *see also Johnson v. Tenth Judicial Dist. Court of Appeals at Waco*, 280 S.W.3d 866, 869 (Tex.Crim.App.2008) (holding that orders directing withdrawal of funds from inmate trust accounts is not a criminal matter). In determining whether Harrell was accorded constitutional due process in that proceeding, the Court balanced three factors discussed in *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), and noted that Harrell had "already received some measure of due process." *Harrell*, 286 S.W.3d at 320.

The three *Eldridge* factors considered in *Harrell* are: (1) the private interest affected by the official action, (2) the risk of an erroneous deprivation of such interests through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards, and (3) the government's interest, including the function involved and the fiscal and administrative burdens that additional or substitute procedural requirements would entail. *Id.* at 319–20 (citing *Mathews*, 424 U.S. at 335, 96 S.Ct. 893). The Court found the private interest to be affected to be easily ascertainable by reference to the amount identified in a prior court document, which

could be "stated with exactness" as "the costs assessed when the convicting court sentenced him." *Id.* at 320. Regarding the risk of erroneous deprivation, the Court identified the risk as modest where withdrawal notifications under the statute are based on an amount identified in a previous court document. *See* Tex. Gov't Code Ann. § 501.014(e)(1)-(6). The Court noted that "Harrell was . . . notified of the costs assessed when the convicting court sentenced him" and he was free to contest them at the time they were assessed. *Harrell*, 286 S.W.3d at 320. However, the Court went on to recognize there could be a greater risk of erroneous deprivation in instances in which the amount in the withdrawal notification varied from the amount in the underlying judgment or those instances where there were clerical or other errors. *Id.* In assessing the final factor, the government's interest, the Court addressed the fiscal and administrative burdens of added or alternative procedures and concluded that the Texas Department of Criminal Justice would face expending more money than it would collect if it were required to conform to "full-blown" statutory garnishment requirements. *Id.* In the Court's opinion, such a drawn-out procedure might subvert the Legislature's goal of efficient cost-collection. *Id.*

Harrell had been convicted of drug charges in 1997 and 2003. In 2006, the convicting trial court signed an order authorizing the Texas Department of Criminal Justice, Institutional Division, to withdraw funds from his inmate trust account to pay for court costs and fees for appointed counsel. Harrell was provided with copies of the withdrawal notifications. He then moved to rescind the withdrawal notifications alleging denial of due process.

---

2. The Judgment includes a space for the trial court to enter an assessment of costs. However, this portion of the judgment was left blank. Subsequently, on October 16, 2006, a bill of costs was entered in the clerk's record that assessed costs relating to Stephen's conviction to be $1,786.50.

His motion was denied, and his direct appeal to this Court was dismissed for want of jurisdiction on the ground that no statutory mechanism was available for appealing a withdrawal notification. *See Harrell v. State,* Nos. 07–06–0469–CR, 07–06–0470–CR, 2007 WL 2301350, at *1, 2007 Tex.App. LEXIS 6416, at *3 (Tex.App.-Amarillo Aug. 13, 2007), *rev'd,* 286 S.W.3d 315 (Tex.2009).

In reversing this Court and rendering judgment affirming the trial court's Order Denying Harrell's Motion to Rescind, the Supreme Court held that due process entitles an inmate to receive notice[3] and an opportunity to be heard, even though those requirements might be accorded the inmate after funds are withdrawn. *Harrell,* 286 S.W.3d at 321. It concluded that, because Harrell had received notice (a copy of the withdrawal notification) and an opportunity to be heard[4] (the motion to rescind), he had received all that due process required. *Id.* The Court added, "[t]he Constitution does not require pre-withdrawal notice or a comprehensive civil garnishment proceeding." *Id.*

■ On the limited record before this Court, we are unable to determine if Stephen has been given all that due process requires. Specifically, we are unable to determine whether Stephen has been (1) provided the necessary underlying documentation, and (2) afforded an adequate opportunity "to compare the amounts assessed by the trial court [in the underlying criminal proceeding] to the amount withdrawn and ·alert the ·court of any alleged errors." *See id.* In that respect, we note that the "risk of an erroneous deprivation of [Stephen's] interests through the procedures used" in this particular case is apparent on the face of the documents contained· in the Clerk's Record. *See id.* at 320.

If an appellate court is uncertain about the intent of an order to finally dispose of all claims, it can abate the appeal to permit clarification by the trial court. *See* Tex. R.App. P. 27.2. Because the record does not reflect that the trial court has ·entered an appealable order either granting or denying a motion to confirm, modify, correct, or rescind the prior withdrawal notification, it would appear that Stephen's notice of appeal is premature. *See Williams v. State,* 322 S.W.3d 301, 303–04 (Tex.App.-Amarillo 2010, no pet. h.). However, because we are directed not to elevate "form over substance" in construing pleadings and because we construe Stephen's "notice of appeal" as a motion to rescind the with-

---

3. In assessing the risk of erroneous deprivation of property, the Supreme Court, in *Harrell,* considered the risk to be "modest" because notice under the statute is "based on an *amount* identified in a prior *court ̈document." Harrell,* 286 S.W.3d at 320 (emphasis added). The Court went on to comment that the risk would be minimized if the trial court included a copy of the underlying order or judgment that assessed costs when it issues a withdrawal notification. We wholeheartedly adopt the Supreme Court's recommendation in this regard.

We further note that the mere assessment of attorney fees does not make them collectable through this process. Under article 26.05(g) of the Texas Code of Criminal Procedure, the trial court has authority to order reimburse-

ment of appointed attorney fees only if the court makes a fact-specific determination that a defendant has financial resources that enable him to offset, in part or in whole, the costs of the legal services provided. *See* Tex. Code Crim. Proc. Ann. art. 26.05(g) (Vernon Supp.2009); *see also Mayer v. State,* 309 S.W.3d 552, 557 (Tex.Crim.App.2010).

4. While the court of appeals's opinion is silent on whether a hearing was held on Harrell's motion to rescind, *Harrell,* 2007 WL 2301350, at *1, 2007 Tex.App. LEXIS 6416, at *3, the trial court did enter a specific order denying his motion to rescind the withdrawal notification. We read the Supreme Court's opinion as assuming that, by this process, Harrell was given "an opportunity to be heard." *Harrell,* 286 S.W.3d at 321.

drawal notification that was filed with this Court rather than with the trial court, we will abate and remand to allow the trial court the opportunity to dispose of this pending motion. *See Higgins v. Randall County Sheriff's Office*, 257 S.W.3d 684, 688 (Tex.2008) (declining to elevate form over substance and concluding that the affidavit of indigence was adequate to fulfill the fundamental purpose of the rule). Finally, we note that Stephen indicates, in his "notice of appeal," that he previously filed a "motion to quash and vacate court's order to withdraw funds," but that the trial court has not ruled on this filing. While no such document is included in the clerk's record of this case, such a motion would appear to put in issue the withdrawal notification and, as such, request a final, appealable order.

Accordingly, this Court *sua sponte* abates this appeal for 90 days from the date of this order to allow the trial court to rule on Stephen's pending motion which was improperly denominated a notice of appeal. All appellate timetables will begin to run from the date a final, appealable order is signed.

It is so ordered.