**Opinion issued July 25, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-12-01096-CR

————————————

**EDUARDO CRUZ RAMIREZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from County Criminal Court at Law No. 1**
**Harris County, Texas**
**Trial Court Case No. 1793517**

---

**O P I N I O N**

Appellant, Eduardo Cruz Ramirez, was charged by information with violation of a protective order. Appellant pleaded not guilty. A jury found him guilty, and the trial court assessed a punishment of 300 days in jail. The trial court also assessed court costs at $402. In two issues, appellant argues the evidence is

insufficient (1) to support his conviction and (2) to support the assessment of court costs.

We affirm.

## Background

Appellant and Miriam Liquez were married, but divorced in 2005. In June 2011, Liquez sought and obtained a protective order against appellant. Among other things, the protective order prohibited appellant from "[c]ommunicating directly with . . . LIQUEZ in a threatening or harassing manner." The protective order was in effect for two years.

In the early morning of November 6, 2011, while Liquez was asleep, appellant called her cell phone. When she awoke that morning, she called the Harris County Sherriff's Office, stating that appellant had left threatening messages on her phone. Appellant ultimately took her phone to the Harris County District Attorney's Office. Someone at the district attorney's office made recordings of voicemail messages on Liquez's phone. Those records were put on a CD and introduced into evidence at the trial.

There were five recordings on the CD. Four of those were from appellant. None of them contained information about the time the message was created. Three of the four messages included references to Liquez's boyfriend. Those same three included vows to kill both Liquez and her boyfriend.

2

At trial, there was some confusion in Liquez's testimony about whether all of the messages from appellant on the CD were created before or after the protective order was entered. Liquez did consistently assert, however, that at least two of the four messages were left after the protective order was entered. She also testified that she did not begin dating her boyfriend until August or September 2011.

Also admitted at trial were exhibits showing phone calls from appellant to Liquez, as well as a legend of some of the codes on the records. The records establish that appellant made at least one call to Liquez around 1:20 in the morning of November 6. The item for that record states that the "Seizure Time" was zero minutes, the "Elapsed Time" was zero minutes, and the "Description" was "M2M_DIR." The legend explains that "M2M" signifies that the telephone call was from one AT&T mobile phone to another AT&T mobile phone. The meaning of "DIR" depends on other factors. "Outbound calls will display DIR except for voicemail checks directly from the handset (VMC). Inbound calls will display DIR if no forwarding took place. Either the phone was answered or rang and was not answered." Other possible codes include "VMC," signifying, "Call was from handset to check Voicemail box," as well as "VMB," signifying, "Call was routed to VoiceMail number."

## Sufficiency of the Evidence

In two issues, appellant argues the evidence is insufficient (1) to support his conviction and (2) to support the assessment of court costs.

### A.  Standard of Review

This Court reviews sufficiency-of-the-evidence challenges applying the same standard of review, regardless of whether an appellant presents the challenge as a legal or a factual sufficiency challenge.  *See Ervin* v. *State*, 331 S.W.3d 49, 53–54 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (construing majority holding of *Brooks* v. *State,* 323 S.W.3d 893 (Tex. Crim. App. 2010)).  This standard of review is the standard enunciated in *Jackson* v. *Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979).  *See Ervin,* 331 S.W.3d at 54.  Pursuant to this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt.  *Jackson,* 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).  We can hold evidence to be insufficient under the Jackson standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the

evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard "gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *accord Clayton* v. *State,* 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson,* 443 U.S. at 326, 99 S. Ct. at 2793. In viewing the record, "[d]irect and circumstantial evidence are treated equally: 'Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt.'" *Clayton,* 235 S.W.3d at 778 (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Additionally, the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt. *See Powell* v. *State,* 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

Sufficient evidence must support an assessment of costs in a bill of costs or in a judgment. *See Mayer* v. *State,* 309 S.W.3d 552, 554–56 (Tex. Crim. App.

2010) (holding that factual predicate for the assessment of court costs included in a bill of costs must be supported by sufficient evidence in the record); *Owen* v. *State,* 352 S.W.3d 542, 547–48 (Tex. App.—Amarillo 2011, pet. ref'd) (holding assessment of costs authorized by statute and supported by record constitutes sufficient evidence). We review the record in the light most favorable to the award in measuring the sufficiency of the evidence to support an assessment of costs. *Mayer,* 309 S.W.3d at 557.

**B.    Violation of the Protective Order**

As he states in his brief, appellant's "defense at trial was that any threatening calls made were made prior to the protective order being granted." Appellant argues on appeal that the evidence is insufficient to establish that the messages in question were made after the protective order became effective. To establish his argument, appellant relies on a hypothetical presented by the Court of Criminal Appeals in *Brooks*.

The Court of Criminal Appeals held in *Brooks* that the standard of review announced in the Supreme Court of the United States's opinion in *Jackson v. Virginia* applied to all sufficiency of the evidence challenges for the elements of the charged offense. *Brooks,* 323 S.W.3d at 912–13,917–18, 922–24, 926–28. The court held that the *Jackson* standard is an exacting standard and provided an example to illustrate its effect:

6

> The store clerk at trial identifies A as the robber. A properly authenticated surveillance videotape of the event clearly shows that B committed the robbery. But, the jury convicts A. It was within the jury's prerogative to believe the convenience store clerk and disregard the video. But based on *all* the evidence the jury's finding of guilt is not a rational finding.

*Id.* at 907. Appellant argues he fits within this scenario because the phone records establish that he did not leave any messages on Liquez's phone on November 6, 2011.

As an initial matter, it is worth pointing out that proof that appellant did not leave a message on Liquez's phone on November 6 is not proof that the messages were left before June 2011, when the protective order became effective. Nevertheless, as the State argues, the phone records do not establish as a matter of law that no messages were left on November 6.

Exhibits showing phone calls from appellant to Liquez as well as a legend of some of the codes on the records were admitted into evidence at trial. The records establish that appellant made at least one call to Liquez around 1:20 in the morning of November 6. The item for that record states that the "Seizure Time" was zero minutes, the "Elapsed Time" was zero minutes, and the "Description" was "M2M_DIR." The legend explains that "M2M" signifies that the telephone call was from one AT&T mobile phone to another AT&T mobile phone. The meaning of "DIR" depends on other factors. "Outbound calls will display DIR except for voicemail checks directly from the handset (YMC). Inbound calls will display DIR if

no forwarding took place. Either the phone was answered or rang and was not answered." Other possible codes include "VMC," signifying, "Call was from handset to check Voicemail box," as well as "VMB," signifying, "Call was routed to VoiceMail number."

Appellant highlights the portion of the legend that explains "DIR" for inbound calls signifies that "no forwarding took place" as well as the definition of "VMB" as a call routed to the voicemail number. Appellant argues that this establishes no voicemail messages were left. We disagree that this is the only conclusion.

The legend explains that "DIR" means, "Either the phone was answered or rang and was not answered." This suggests no activity by the phone's owner. Other codes, in contrast, suggest activity by the phone's owner. "VMC" indicates the owner checked voicemail. "FWD" suggests the owner forwarded the call to another number. "VMB" could just as easily suggest that this code is used when the owner actively sends the call to voicemail. Under this interpretation, "DIR" does not exclude the possibility that the call was sent to the owner's voicemail when the owner did not answer the phone or refused to accept the call, only that the owner did not actively direct it to voicemail.

This construction of the legend is not compelled, but it is not excluded either. Accordingly, the record does not disprove that appellant left the threatening messages after the protective order became effective.

In addition to this evidence, Liquez testified that at least two of the four messages were left after the protective order was entered. She also testified that she did not begin dating her boyfriend until August or September 2011, several months after the protective order was entered in June 2011. Three of the messages left by appellant referenced her boyfriend. We hold that this is sufficient evidence to support the jury's determination that appellant's threatening messages were left after the protective order became effective.

We overrule appellant's first issue.

## C.     Court Costs

Appellant presents a number of grounds for his argument that the costs assessed are not supported by the record. First, appellant argues that the bill of costs included in the record does not meet the statutory requirements for a bill of costs under article 103.001 of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 103.001 (Vernon 2006). Article 103.001 provides that costs are not "payable" until a bill of costs containing "the items of cost, signed by the officer who charged the cost" "is produced or is ready to be produced." *Id.* This statute concerns when costs are payable, not how they can be

assessed in a judgment. *See id.* The case before us is a direct appeal from a criminal conviction, not a proceeding to collect costs for which a bill of costs satisfying article 103.001 is required.

Nonetheless, we note that the record was supplemented to include a bill of costs that fulfills the requirements of article 103.001. It contains an itemized list of court costs imposed on Ramirez, and the last page contains a certification stamp, signed by the clerk, followed by the initials of the trial court deputy clerk. For all of these reasons, we reject appellant's objections to the cost bill.

Next, appellant argues that there is no indication that the bill of costs was presented to the trial court at the time of the judgment or at any other time. As appellant acknowledges, however, we have held that presentment is not required. "[A] bill of costs is not itself factual evidence to support the assessment of costs in a [sufficiency of the evidence] inquiry. Rather, costs assessed in a bill of costs, like those assessed in the judgment, must be supported by the record." *Thomas* v. *State*, No. 01-12-00487-CR, 2013 WL 1163980, at *3 (Tex. App.—Houston [1st Dist.] Mar. 21, 2013, no pet.).

Appellant further argues that he was denied due process by not being given notice of the bill of costs at the time of judgment. In making this argument, appellant relies on *Harrell* v. *State,* 286 S.W.3d 315 (Tex. 2009). As we have recently held, "*Harrell* is procedurally distinguishable because it was a civil

proceeding filed by a prison inmate who challenged the withdrawal of funds from his trust account to pay court costs, but did not challenge the amount of costs assessed. [*Id.*] at 316–17. In contrast, [*Cardenas*] is a direct criminal appeal that does purport to challenge the assessment of costs." *Cardenas* v. *State*, No. 01-11-01123-CR, 2013 WL 1164365, at *5 (Tex. App.—Houston [1st Dist.] Mar. 21, 2013, no pet.). The same reasoning applies in this case. This is a direct criminal appeal that does purport to challenge the assessment of costs.

Finally, appellant argues that the evidence is insufficient to support the portion of the bill of costs concerning summoning witnesses. A defendant convicted of a felony or misdemeanor must pay "$5 for summoning a witness" when those services are performed by a peace officer. TEX. CODE CRIM. PROC. ANN. art. 102.011(a)(1) (Vernon Supp. 2012). The bill of costs assesses $100 for summoning 20 witnesses.

The record establishes that a peace officer summoned over 10 witnesses on September 13, 2012, over 10 witnesses on September 25, and 8 witnesses on November 14. This is sufficient to support the assessment of costs for summoning 20 witnesses.

Appellant argues that the sheriff's return does not match the number of summonses requested for the specified dates. We disagree. The Sheriff's return

explicitly states that all of the witnesses in the subpoena were summoned. The return lists the witnesses by category, but indicates that all were summoned.

Appellant also argues that there is an ambiguity in how the calculation is performed. He argues that, under one reading of the statute, the charge applies each time a person is summoned. Alternatively, under another reading, the charge applies once to each individual regardless of the number of times the person is served a summons.

Matters of statutory construction are questions of law, which this Court reviews de novo. *Williams* v. *State*, 253 S.W.3d 673, 677 (Tex. Crim. App. 2008). When construing a statute, our primary objective is to ascertain and give effect to the Legislature's intent. TEX. GOV'T CODE ANN. § 312.005 (Vernon 2013); *see also Bryant* v. *State,* 391 S.W.3d 86, 92 (Tex. Crim. App. 2012). To discern that intent, we must consider the plain language of the statute and may consider the legislative history and the consequences from alternative construction. *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 2013); *see also Bryant,* 391 S.W.3d at 92. We further consider statutes as a whole rather than their isolated provisions. *See Nguyen* v. *State,* 1 S.W.3d 694, 696 (Tex. Crim. App. 1999).

As the State points out, the statute requires a defendant to "pay 29 cents per mile for mileage required of an officer to perform a service listed in this subsection and to return from performing that service." CODE CRIM. PROC. art. 102.011(b).

12

This indicates that the intent of the statute is to reimburse the costs borne by the peace officer. This goal would not be achieved by allowing only one payment for summoning a witness regardless of the number of times that witness would have to be summoned. Accordingly, we construe the statute to require a $5 fee for each witness summoned each time the witness is summoned.

We overrule appellant's second issue.

## Conclusion

We affirm the judgment of the trial court.


Laura Carter Higley
Justice

Panel consists of Justices Keyes, Higley, and Bland.

Publish. TEX. R. APP. P. 47.2(b).